(October 15, 1910.)

## ROBERT LANSDON, Plaintiff, v. STATE BOARD OF CANVASSERS, Defendant.

[111 Pac. 133.]

PRIMARY ELECTION — CANVASSING RETURNS — DUTIES OF CANVASSING BOARD—JURISDICTION OF CANVASSING BOARD—WRIT OF REVIEW— CONDUCTING ELECTIONS A POLITICAL POWER — JURISDICTION OF COURTS IN ELECTION MATTERS.

(Syllabus by the court.)

1.   A writ of review brings up the record of the tribunal, board or body whose acts are to be examined, and is issued for the purpose of reviewing the law applicable to the case, instead of examining the facts of the case, except in so far as an examination of the facts is necessary in the determination of the single question of jurisdiction.   The purpose of the review is to determine primarily the law applicable to the case rather than the facts of the case.

2.   The state board of canvassers in canvassing election returns sent up by the boards of canvassers of the several counties and computing the total vote received by each candidate and certifying to the secretary of state the names of the persons who received the majority or plurality, as the case may be, of all votes cast for each respective office, is discharging a ministerial duty rather than a judicial function.   Mathematical computation and calculation does not constitute the exercise of judicial functions.

3. It is the nature of the act to be performed rather than of the office, board or body which performs the act that determines whether or not it is the discharge of a judicial or *quasi*-judicial function.

4. The fact that the state board of canvassers on receiving returns from the boards of canvassers of the several counties did not consider such returns inaccurate, uncertain, or as showing on their face omissions or errors, and their consequent neglect or refusal to send the same back to the county boards of canvassers for correction, does not constitute an excess of jurisdiction, nor does it oust the board of the jurisdiction acquired to canvass returns and declare the results.

5. It is not the business or duty of the state board of canvassers to determine whether or not any illegal votes have been cast or legal votes rejected; they have no way to know whether more votes have been counted than were actually cast or that the count has been made in every instance correctly by the various election officers or canvassing boards. The duty of the state board of canvassers is that of casting up the returns and declaring and certifying the result as shown by the returns.

6. *Green v. State Board of Canvassers,* 5 Ida. 130, 95 Am. St. 169, 47 Pac. 259, considered and distinguished.

7. The right to vote and hold office is not one of the inalienable rights of the citizen; the regulation of that privilege conferred on the citizen has been delegated to the political department of the state government, and will not be controlled or interfered with by the courts, except in so far as the law-making power has provided a remedy that may be pursued in the courts, or in cases where the law commands action and election officers or boards refuse to act, or where such officers or boards attempt to act in a manner contrary to or violative of the statute.

8. Under the direct primary nomination law of this state, there is no provision for the contest of the nomination of a candidate for the office of governor.

Original application by the secretary of state against the state board of canvassers for a writ of review. Demurrer to petition sustained, writ denied and action dismissed.

Edwin Snow, for Plaintiff.

Under our statute the state board of canvassers is certainly vested with judicial functions. (Sec. 458, Rev. Codes.)

The petition alleges that the abstracts of votes sent to the state canvassers from the various counties showed on their

face that 6,849 more first choice votes for the office of governor on the Republican ticket were certified and returned than second choice votes.

The case of *Adams v. Lansdon, ante,* p. 483, 110 Pac. 280, decided that all ballots which failed to designate a second choice were illegal.

The face of the returns before the state canvassers clearly showed, then, without any room for dispute, that there were nearly twice as many illegal votes returned in the abstracts as the plurality of the leading candidate amounted to. Should it not, then, have *clearly appeared to the canvassers,* at least, that certain matters were omitted from the abstracts and that they should have been returned for correction? And was not this determination judicial in its nature? (*Stein v. Morrison,* 9 Ida. 426, 75 Pac. 246.)

The cases cited by the defendant board are inapplicable: first, because they are all from other states where the statutes governing the duties of the state board of canvassers differ from ours, and, secondly, because all the cases cited by defendant can be shown to have been decided under circumstances where the duties of the board with respect to determining who was elected were called in question, and not where the duties of the board with respect to determining the *validity of the returns* were raised.

The only reported case in which the action of the state board of canvassers was litigated in this court was upon a *certiorari* proceeding. (*Green v. State Board of Canvassers,* 5 Ida. 130, 95 Am. St. 169, 47 Pac. 259.)

Certainly it could not be contended that the board has jurisdiction to act in a patently unlawful manner and certify nominees upon returns shown on their face to be void. (*State v. State Canvassers,* 36 Wis. 498; *State v. Baker,* 38 Wis. 71; 15 Cyc. 381.)

Cavanah & Blake, and Edgar Wilson, for Defendant.

The act of the state board of canvassers, in certifying these nominations to the secretary of state, was not in any sense judicial, but purely ministerial in character. (*Adleman v.*

*Pierce,* 6 Ida. 294, 55 Pac. 658 ; *Murphy v. Board of Equaliza-*
*tion,* 6 Ida. 745, 59 Pac. 715 ; *Bank of Commerce v. Wood,* 13
Ida. 794, 93 Pac. 257.)

"*Certiorari* does not lie to review the acts of an election
board in receiving votes, and announcing the result, as they
are not judicial in character." (*People v. Austin,* 20 App.
Div. 1, 46 N. Y. Supp. 526 ; *People v. Van Slyck,* 4 Cow. (N.
Y.) 297 ; McCreary on Elections, 3d ed., secs. 226, 229.)

In a republican form of government the courts should
hesitate long before interfering in respect to the actions of
canvassing boards affecting elections. That is not one of the
functions of the courts, and we believe is never assumed to be
the duty of the courts unless fraud is alleged and proven.

Even if boards of this character make errors (although in
this case even error is not claimed in the petition), it is not
the province of the courts to correct that by this extraordinary
remedy. (*Sherer v. Superior Court,* 94 Cal. 354, 29 Pac. 716 ;
*People ex. rel. Lemby v. Dwinelle,* 29 Cal. 632.)

"Where great public detriment or inconvenience would or
might have resulted from interfering with the proceedings of
public bodies which exercise rights in which the people at
large are concerned, and no substantial injury would result
from its refusal, the writ has been denied, and its allowance
in such cases is discretionary." (6 Cyc. 748, and cases cited.)

AILSHIE, J.—In this proceeding it is sought to review the
action of the state canvassing board. Since the right of the
plaintiff to proceed by writ of review is questioned, it is
necessary to recall the province of that writ and the scope of
its operation. Under the statute, sec. 4962, the writ will only
issue to review the exercise, or rather excessive exercise, of
judicial functions. A writ brings up the record of the board,
tribunal or body whose acts are to be examined. The statute,
sec. 4968, provides that, "The review upon this writ cannot
be extended further than to determine whether the inferior
tribunal, board or officer has regularly pursued the authority
of such tribunal, board or officer." This is not, therefore, a
remedy by which the facts in any given case or controversy

may be reviewed, except in so far as it is necessary to consider the facts in the determination of the single and sole question of *jurisdiction.* The purpose of the review is to determine the law applicable to the case and not the facts.

In *McConnell v. State Board of Equalization,* 11 Ida. 662, 83 Pac. 494, this court said: "The writ of review is not a remedy for correcting errors and mistakes of judgment, neither can it be invoked for the purpose of reviewing the facts upon which the inferior tribunal, board or officer acted, except for the purpose of ascertaining the one fact of jurisdiction. Its province is limited entirely to a review of the questions of law involved in the matter. The court should in such cases always confine its inquiries to the question as to whether or not the action complained of was beyond and in excess of the jurisdiction conferred on the tribunal, board or officer."

That holding has been reiterated by this court time and again. (*Sweeny v. Mayhew,* 6 Ida. 455, 56 Pac. 85; *Adleman v. Pierce,* 6 Ida. 294, 55 Pac. 658; *Coeur d'Alene M. Co. v. Woods,* 15 Ida. 26, 96 Pac. 210; *Utah Assn. of Credit Men v. Budge,* 16 Ida. 757, 102 Pac. 390, 691.)

Now, it will appear at once that if the record, to wit, the election returns from the several counties as filed with the state board of canvassers should be certified up to this court as requested by the plaintiff, there would be nothing to determine by this court except as to whether or not the board had jurisdiction to canvass the returns, compute the total number of votes received by each candidate as they appear from the returns, and certify to the secretary of state the names of the persons who received the majority or plurality, as the case may be, for each of the various offices shown and designated on the returns. This is the very thing that the plaintiff alleges the board did, and it is of that action that he complains.

It would have to be conceded that the board has the general power and jurisdiction to canvass election returns and declare the result. Plaintiff contends, however, that since these returns show some six thousand more first choice votes as

having been cast for the various candidates for governor than
there are second choice votes shown by the returns, it must
be assumed that the various election officers—either the pre-
cinct officers or the canvassing boards of the several coun-
ties—have counted, computed and returned to the state
canvassing board some six thousand more first choice votes
than were in fact cast at the late election. If this were con-
ceded to be a fact, still that fact did not oust the state can-
vassing board of its jurisdiction to canvass the returns and
certify the result. It is true that if such fact appeared it
might influence the canvassing board in determining as to
whether or not they should send the returns back to the
several counties for correction, but as to whether they do that
or not, although their action might be˙ erroneous, it would
not affect their jurisdiction. (2 Spelling on Injunctions and
Extraordinary Remedies, sec. 1891; *Utah Assn. of Credit Men
v. Budge,* 16 Ida. 757, 102 Pac. 390, 691.) They clearly have
the jurisdiction, under sections 457 and 458 of the Rev.
Codes, to send the returns from any county back to the board
for correction; but to do so or decline to do so, either, is not
an excess of jurisdiction. To do so or to decline to do so
does not oust the board of its jurisdiction to canvass the re-
turns and declare the result.

Sec. 457 of the Rev. Codes provides that, "whenever the
board of county canvassers, or of state canvassers, shall find
that the returns from any precinct, ward, county or district
(as the case may be) do not strictly conform to the require-
ments of law, in the making, certifying and returning of the
same, the votes polled in such precinct, ward, county or dis-
trict shall, nevertheless, be canvassed and counted if such re-
turns shall be sufficiently explicit to enable such boards, or
any person or persons authorized to˝ canvass votes and re-
turns, to determine therefrom how many votes were polled for
the several persons who were candidates and voted for at the
election of which the votes are being canvassed."

Sec. 458, in further aid of the provisions of sec. 457, says:
"If upon proceeding to canvass the votes it shall clearly ap-
pear to the canvassers that in any statement produced to

them certain matters are omitted in such statement which should have been inserted, or that any mistakes which are clerical, merely, exist, they shall cause the said statement to be sent by one of their number (whom they shall depute for that purpose) to the precinct or ward judges, or to the county board of canvassers (as the case may be) from whom they were received, to have the same corrected; and the judges of election or county auditor (as the case may be), when so demanded, shall make such correction as the facts of the case require, but shall not change or alter any decision before made by them, but shall only cause their canvass to be correctly stated; and the canvassing board may adjourn from day to day for the purpose of obtaining and receiving such statement: Provided, always, That they shall not delay counting past the day provided by law for the completion of the canvass."

It would appear from the petition in the case that the returns from the several counties were sufficiently full, complete and explicit to satisfy the state board of canvassers, and to, in their judgment, justify them in proceeding to canvass the returns and declare the result. It is not the business of the board to determine whether any illegal votes have been cast or not; indeed, they have no way to know either whether more votes have been counted than were actually cast, or that the count has been made in every instance correctly by the various election officers or canvassing boards. The duty of the state canvassing board is that of adding up the votes received by the several candidates as returned by the canvassing boards of the several counties and ascertaining the total vote and declaring and certifying the result. These are purely clerical, ministerial and administrative acts and involve no judicial discretion.

In the case of *State v. Osburn,* 24 Nev. 187, 51 Pac. 838, the supreme court of Nevada held that "the determination as to the result of an election by a canvass of the returns by the city council is not a judicial act, but is purely a matter of calculation, and hence cannot be brought up for review by *certiorari.*" This proposition is sustained by many authori-

ties.   (McCreary on Elections, 3 ed., sec. 226; *Bouldin et al. v. Lockhart*, 3 Baxt. (Tenn.) 262; *Esmeralda Co. v. Third District Court*, 18 Nev. 438, 5 Pac. 64; concurring opinion of Maxwell, J., in *State ex rel. Benton v. Elder*, 31 Neb. 169, 47 N. W. 710, 10 L. R. A. 800; *State v. Barber*, 4 Wyo. 56, 32 Pac. 14; 15 Cyc. 380.)

We will not undertake to say at this time that the board could not, under any circumstances, perform a judicial or *quasi*-judicial function in the discharge of its duties as a canvassing board.   It is the nature of the act rather than of the office or board which performs the act that determines whether or not it is the discharge of a judicial or *quasi*-judicial function.   (*Quinchard v. Board of Trustees*, 113 Cal. 664, 45 Pac. 856; *State v. Osburn*, 24 Nev. 187, 51 Pac. 837.)

In the case at bar, however, it is clear that no judicial function has been invoked or called into action.   We are not unmindful of the case of *Green v. State Board of Canvassers*, 5 Ida. 130, 95 Am. St. 169, 47 Pac. 259, on which plaintiff relies as authority for resorting to the writ of review to review the action of the board in canvassing the vote and declaring the result.   That was a friendly suit invited by resolution of the canvassing board in order to get a construction by the court of art. 20 of the constitution, and no question was raised as to review being the proper remedy, nor do we desire to be understood as questioning but that it was the proper remedy in that case.   There the only thing to be determined was whether or not the board reached the right conclusion of law upon the facts that it had found.   After canvassing the vote the board made a finding that 12,126 votes had been cast in favor of the amendment and 6282 votes against it.   The board thereupon concluded and so certified that the amendment had been lost.   This was based wholly and solely upon the construction which the board placed on the several provisions of art. 20 of the state constitution.   No question of fact was involved.   It was purely a question of law.   The court considered the matter and reached the conclusion that the canvassing board had exceeded its jurisdiction as a matter of law when it decided that in order to adopt

an amendment to the constitution, it required a majority of all the electors of the state who voted at that election instead of requiring a majority of all the electors who voted on that particular amendment. So it might be here. If one candidate had received a clear majority of all the votes cast and the board should so find and yet should certify his opponent as having been nominated, there would certainly be a remedy. This would be an error of law instead of fact.

It has been argued very forcibly by counsel for plaintiff that in this case there is no remedy by appeal, no remedy by *mandamus,* no remedy by prohibition, and no remedy by contest, and that since there must be a remedy for every wrong he must be entitled to invoke the writ of review. It is a maxim of the law that for every wrong or injury the law affords a remedy. That has its exceptions, however, the same as all other maxims and rules that have been devised by man, and that exception is to be found in popular elections. Each member of society has to suffer some burdens and inconveniences for the sake of society or in order that some other member of society may exercise his equal rights as a citizen. A man may be defeated by all kinds of foul and unfair means having been used against him with the electorate of the state, and yet he may not find any remedy in the courts. (*Sherer v. Superior Court,* 94 Cal. 354, 29 Pac. 716.) If he has any remedy at all, he must seek it before the people. This grows out of the very nature of popular elections. Falsehood and misrepresentation which would vitiate a contract or afford a man relief in a civil action involving his business and property interests is often passed unrebuked and is sometimes rewarded with victory in politics.

It has been repeatedly held by numerous courts that the holding of elections belongs to the political branch of the government, and is beyond the control of the judicial power of the state except in so far as the law-making body has specifically vested such power in the courts; that it was not designed by American constitutions that any one department of government should interfere with or control another; and that it is for the political power of the state within the

limits of the constitution to provide the manner in which elections shall be held, the manner of conducting the same and declaring the result and the manner in which elections shall be contested if at all. This doctrine was enunciated in *Dickey v. Reed,* 78 Ill. 261, and was reiterated and affirmed in *Douglas v. Hutchinson,* 183 Ill. 323, 55 N. E. 628, and in *Williamson v. Lane,* 52 Tex. 335, and the same doctrine was announced and those cases were followed by this court in *Toncray v. Budge,* 14 Ida. 636, 95 Pac. 26.

It will also be seen from a mere cursory examination of the authorities that the courts have been extremely reluctant to interfere with the holding and conducting of elections in any manner except as specially authorized by the statute or constitution. Since the right to vote and hold office is not among the inalienable rights of which the American people are so jealous, the regulation of this branch of the rights and privileges of the citizen has been delegated to the political department of the state in every state in the Union. (15 Cyc. 280, 281, and cases cited.)

And so it may happen, and often does, that in the course of elections many persons who are either defeated candidates or the friends and supporters of those candidates may feel that they have been wronged either by someone being allowed to vote who was not an elector or some vote being improperly rejected or improperly counted, but the aggrieved party must depend upon the honesty and sense of fair dealing of those conducting the elections for his redress unless a specific remedy is pointed out by law for such a case. Where the law commands action and election officers or boards refuse to act, the courts will also compel action, or where they attempt to act in a manner contrary to or violative of the statute, the courts will reach out and restrain them, but will never interfere to correct mere errors or irregularities unless specifically so authorized.

It is clear that there is no such thing as a contest provided for by the primary election law for the office of governor, because contests for governor take place before the legislature meets. But aside from this it is extremely doubtful if the

primary election law provides for or contemplates any such thing as a contest. The very nature of a primary election law would seem to preclude any proceeding such as a regular contest is usually conducted in the ordinary course of law. Under the ordinary procedure pointed out for conducting election contests the general election would be over before a primary contest could be finally settled in the courts; unless, indeed, the courts abandon all their ordinary civil and criminal work and convert themselves into courts for the hearing of election contests. A contest after the general election can take place in due course of law because there is someone occupying the office who is qualified to discharge its duties, and there will therefore be no *interregnum* or cessation in the performance of the public duties. But there is such a short time intervening between the primary election and the general election that contests could not generally be heard and finally determined in accordance with the general laws providing for contests, and nothing but a summary proceeding could be reasonably provided. It may be desirable that such a law should provide for a summary recount or contest in cases where it is alleged that a gross error or a fraud has been committed in the count or canvass of the vote, but such a remedy is not essential to the validity of the law. Conventions have been recognized by statute, and indeed provided for in many states for years, and yet no one ever thought of providing for contesting the result of a convention or having a recount of votes cast or anything of that kind, and still it was recognized all along that many wrongs were committed and often fraud practiced in the holding of conventions. A primary election law is merely a substitute for a convention, and the only thing accomplished by it is that of selecting candidates for the several parties whose names shall go on the official ballot for the general election.

Under the primary election law as construed by this court in *Adams v. Lansdon, ante,* p. 483, 110 Pac. 280, there being more than two candidates for governor at the late primary election, it was necessary for the voter to cast both a first and second choice vote. If, therefore, every first and second

choice vote cast had been correctly counted and retained by the election officers, the abstracts from the various counties would show the same number of first choice votes as having been cast for governor that it would show of second choice votes. As a matter of fact, however, according to the complaint of the plaintiff herein the returns show a discrepancy of 6,849 votes, there being that many more first choice votes returned for governor than there were second choice votes. It is claimed that this fact appearing on the face of the returns rendered them so irregular and defective that it was clearly and unmistakably the duty of the board under the provisions of sec. 458 to send them back to the counties for correction before proceeding to canvass the vote. It is further claimed that the failure to do so amounts to an excess of jurisdiction on the part of the board which should be reviewed by this court.

As heretofore stated, if it should be conceded that this was error on the part of the board, still it could not be termed an excess of jurisdiction nor did it oust the board of jurisdiction to proceed and canvass the vote. Taking the allegations of the complaint as true, which we must do for the purposes of this demurrer, it is then clear that the election officers or canvassing boards have either counted and returned more first choice votes than were actually cast or fewer second choice votes than were in fact cast. It is, however, more reasonable to assume that the latter is true than the former, and it is most likely that the board took that view of the matter. It is altogether probable that election officers in many of the precincts where second choice votes were cast for persons whose names were not on the official ballot did not return these miscellaneous second choice votes to the county canvassing boards, and that in that manner the count of a great many scattering second choice votes that were cast promiscuously for persons whose names did not appear on the official ballot were lost between the time of the count in the precinct and the certification of the official canvass to the state board. Had the board sent back these several returns to the county canvassing boards, the county boards

would in all probability have been unable to account for this shortage or difference. But the state board has no power or authority to compel the county canvassing board to send the precinct returns back to the several precincts for a recount, and it is altogether probable that many of the county boards would have declined to do so. Neither could this court on *certiorari* order the board to send the returns back to the several counties. This same state of facts and condition might as easily arise in a general election as in a primary election. Someone might conceive the idea that all the votes for some particular office had not been counted, or else that too many votes had been counted for some other office. It often happens in the general election that the candidates for some particular office on the ticket have altogether received some thousands of votes more than all the candidates for some other office on the same ticket have received. Upon the same reasoning that is urged here someone might insist on the board sending such returns back for correction or a recount. There is no authority, either in law or practice, for such a procedure.

Some errors will necessarily occur in the holding of elections. It is perhaps safe to say that no election was ever held that was free from error, but no man has any vested right in an office or in the right to run for office. Upon the whole and in the aggregate the results obtained accomplish substantial justice and achieve the will of the people. Persons who become candidates for office must of necessity assume the risks and run the chances of mistakes and errors being made in the holding of elections. In the conducting of elections by popular vote, much has to be trusted to the honesty and integrity of election officers and the people at large and to the vigilance of the electors in detecting error or fraud and causing its correction at the time when and place where it is committed. Fortunately, in this country, there can scarcely be found an election precinct anywhere in which all the electors are the friends or partisans of any single candidate or of any one political party, and so it generally happens that the vigilance of the friends and adherents of opposing candi-

dates of the same party or of opposing parties tends to hold the others in reasonable restraint from committing serious errors or excesses.

The complaint fails to show that the canvassing board has exercised any judicial functions or has exceeded its authority in the exercise of any of its powers, and we conclude that the writ of review will not lie to examine its action in canvassing the election returns. We are also satisfied that if this were a case in which the writ might issue that the facts pleaded would not authorize or justify the court in vacating or modifying the action of the board in canvassing the returns and certifying the result. Demurrer sustained, writ denied and action dismissed. No costs awarded.

Sullivan, C. J., concurs.