(No. 7261.   November 28, 1945.)

GEORGE STRECKER, Plaintiff-Respondent, v. HOMER SMITH, Defendant-Appellant .

[164 P. (2d) 192.]

Bandelin & Bandelin, and W. F. McNaughton for appellant.

Everett E. Hunt and W. B. McFarland for respondent.

GIVENS, J.—Appellant was elected county commissioner of the Second Commissioner District of Bonner County at the general election, November 7, 1944. Respondent contested his election under Section 33-1701, I.C.A.,[1] on the ground that appellant is not eligible under Section 30-602, I.C.A.[2]

From 1912 to 1942, except for a period in 1929, appellant lived near Laclede in District No. 2, north of the Pend d'Oreille River. In 1942 his father died and he moved to his parents' farm, south of the river in District No. 1, where his mother resided, and handled the property for her. October 3, 1944, appellant returned to Laclede in District No. 2.

The admitted circumstances of appellant's handling, managing and operating his mother's property; that he voted at a school election in District No. 1, April 21, 1944; that he paid taxes on personal property in District No. 1 in 1944; and that he made this statement at a public hearing held by the United States Engineers Office of the War Department at Priest River, June 19, 1943, "* * * as stated, I am a farmer living across from Laclede * * *", evidently caused the learned trial judge to consider appellant an elector of Commissioner District No. 1 at the time of the

---

[1] "33-1701. *Grounds of contest.*—The election of any person to any public office, * * * may be contested:

\* \* \* \*

"2. When the incumbent was not eligible to the office at the time of the election.

\* \* \* \*"

[2] "30-602. *District from which elected.*—Each member of a board of commissioners must be an elector of the district he represents."

primary, as the "election" referred to in Section 33-1701, supra.

■ Section 30-602, supra, first appears in the 1887 Revised Statutes as Section 1746. It is incumbent, therefore, to determine what meaning was attached to the word "elector" at that time and period. (*Wright v. Callahan,* 61 Ida. 167 at 176, 99 P. (2d) 961.)

An elector was then defined as:

"All male inhabitants over the age of twenty-one years, who are citizens of the United States, and have resided in the Territory four months, and in the county where they offer to vote thirty days, next preceding the day of election, 'if registered as in this Code provided,' are entitled to vote at any election for Delegate to Congress, and for Territorial, County, and Precinct officers, except as provided in the next section." Section 500, 1887 Revised Statutes of Idaho.

Only one election was then authorized, as follows:

"There must be held throughout the Territory, on the first Tuesday after the first Monday of November, in the year eighteen hundred and eighty-eight, and in every second year thereafter, an election, to be known as the general election." Section 465, Revised Statutes of 1887.

At this election there were to be elected "* * * one county commissioner for each of the three districts for each county * * *." Section 466, Revised Statutes of 1887.

■ At that time there was no such thing as a primary election such as we have at the present time, which is a 'nominating' not 'electing' election. (Section 33-601, I.C.A.; *Lansdon v. State Board of Canvassers,* 18 Ida. 596 at 606, 111 P. 133.)

■ The context of Section 33-1701, supra, clearly connotes that 'election' in Section 2 refers to the 'election' in the first general paragraph, and this means the final determinative selection to the office, not nomination as a candidate. The primary does not result in an "election" to public office, only nomination for a place on the ballot (except for non-partisan judicial positions, *Fisher v. Masters,* 59 Ida. 366, 83 P. (2d) 212).

■ The subsequent and present constitutional and statutory qualifications of an elector are not materially different[3] from the first enactments so far as this controversy is concerned, and it would appear conclusive that the qualification required of a county commissioner as being "an elector of the district he represents" was intended by the legislature to apply to the possession of this qualification at the time of the general, not the primary election. (*Bradfield v. Avery*, 16 Ida. 769 at 776, 102 P. 687.) It will be noted that the qualification for appointment is on a different basis. (Section 57-908, I.C.A.[4]

■ The pertinent findings and conclusions are:

III

"That prior to * * * July, 1942, * * * Smith was an

_____

[3] *Qualifications of electors.*—Except as in this article otherwise provided, every male or female citizen of the United States, twenty-one years old, who has actually resided in this state or territory for six months, and in the county where he or she offers to vote, thirty days next preceding the day of election, if registered as provided by law, is a qualified elector; and until otherwise provided by the legislature, women who have the qualifications prescribed in this article may continue to hold such school offices and vote at such school elections as provided by the laws of Idaho territory." Article 6, Section 2, Constitution of Idaho.

"33-401. *Qualifications of voters.*—Every person over the age of twenty-one years, possessing the qualifications following, shall be entitled to vote at all elections: He shall be a citizen of the United States and shall have resided in this state six months immediately preceding the election at which he offers to vote, and in the county thirty days: provided, that no person shall be permitted to vote at any county seat election who has not resided in the county six months, and in the precinct ninety days, where he offers to vote; nor shall any person be permitted to vote at any election for the division of the county, or striking off from any county any part thereof, who has not the qualifications provided for in section 3, article 18, of the constitution; nor shall any person be denied the right to vote at any school district election, nor to hold any school district office on account of sex."

[4] "57-908. *Residence of appointed commissioner.*—Whenever the governor appoints a county commissioner to fill a vacancy in any county, he shall appoint a person who is a resident of the commissioner district of the county in which the vacancy exists."

elector of Laclede Precinct; that on or about * * * July, 1942, * * * Smith removed from * * * the second Commissioner District * * * without * * said * District, and established a residence * * * October, 1944, * that such removal * * * was made without * intent * * * to retain his domicile in said Laclede Precinct and * * * to return to, or to retain his rights as an elector of, said Laclede Precinct."

## IV

"That, prior to the * * * primary election * * * in * *, 1944, * * Smith filed his declaration of candidacy for the office of County Commissioner for the Second Commissioner District * *, in which * * he certified * he possessed the legal qualifications to fill said office. That, at the time * * * of the * * primary * * * Smith was not a resident within, nor an elector within, the Second Commissioner District * * *."

## CONCLUSIONS OF LAW

### I

"That Homer Smith was not entitled to become a candidate for said office at the primary election held in June, 1944, nor a candidate at the general election next following said primary."

### II

"That the purported election of * * * Smith as Commissioner * * *, on the 7th day of November, 1944, should be held to be null and void by reason of his disqualification to hold such office, due to his not being an elector of the Second Commissioner District at the date of the holding of the primary election."

These findings do not negative appellant's being an elector after his return to Laclede Precinct, October 5, 1944 or on November 7, 1944. It might be that at the time of leaving the district in 1942, he had not intended to retain any domicile in Laclede or to return, but these are not definite findings as to his status upon his return in October, if he then intended to establish his legal residence in District No. 2, because his previous intent or lack of intent would not control. He was not a newcomer as he had twice

previously been elected county commissioner from District No. 2. His conduct was consistent with sufficient permanency of resumed residential intent to constitute him an elector. (*MacLeod v. Stelle*, 43 Ida. 64 at 72, 249 P. 254.)

The statute only requires residence for a designated length of time, but conceding intent to remain is essential, and that such intent being but a state of mind, is to be gleaned from all surrounding facts and circumstances as well as what the individual himself says; nevertheless the only positive and direct evidence with regard to appellant's intent, so far as essential, at the time he resumed his actual physical residence in District No. 2, October 5, 1944, regardless of what might have been his previous acts or intent, is to the effect that from that date on he intended to be a resident of that district, and was and had been so residing therein more than thirty days prior to the general election, November 7, 1944, all that the statute requires.

Therefore, being an elector of that district at the time of the general election, appellant was clearly eligible and the judgment of the trial court is reversed, with instructions to enter judgment in favor of appellant.

Ailshie, C.J., Budge, Holden and Miller, JJ., concur.