ANTHONY WALTON, J. E. Erb, and Bert Solberg, Plaintiffs and Contestants, v. BEN OLSON, Guy Humphreys, O. N. Cleven, and George Reishus, Defendants and Contestees.

(170 N. W. 107.)

**Error — acquiescence in — takes away right to object — certain procedure — consenting to — stipulation for admission of certain evidence — procedure erroneous — party is estopped to question — in appellate court — such evidence inadmissible.**

1. Acquiescence in error takes away the right of objecting to it. And where a party consents to a certain procedure, and stipulates that certain evidence may be admitted, he is estopped from asserting in the appellate court that the procedure was erroneous and the evidence inadmissible.

**Primary election — nominating conventions — takes place of — separate entity — of political parties participating in — preserved — party organization — means for maintenance — provided — legislature — intention — ballots — of each party — canvassed separately — separate declaration of result.**

2. The primary election provided by our laws takes the place of the former nominating conventions; the separate entity of the several political parties participating in the primary election is preserved, and the means for the maintenance of party organizations provided, and it was the intention of the legislature that the ballots of each party should be canvassed separately, and a separate declaration of the result of the primary election made by the canvassing board as to each political party.

**Nomination to office — person claiming to have received — ticket of one political party — upon — contest nomination — of another candidate — notice of — service of.**

3. Where a person who claims to have received the nomination for some office upon the ticket of one of the political parties which participates in a primary election in this state desires to contest the nomination of another candidate or candidates, under § 881, Compiled Laws, 1913, he must serve a notice of contest upon the adverse party or parties within ten days after the county canvassing board, has completed, and officially declared the result of, the canvass of the votes of the particular party on whose ticket the contestant seeks nomination.

Nomination — contest of — statute providing for — summary remedy — secure
   speedy trial — notice of contest — must be given in certain time — re-
   quirement — is mandatory — compliance — essential — to maintain con-
   test.

    4. The purpose of a statute providing for the contest of a nomination or an
election is to furnish a summary remedy and to secure a speedy trial. And a
requirement that notice of contest be given within a certain time from the
date of the happening of a certain event is mandatory and compliance there-
with is an essential element of the right to maintain the contest proceeding
at all.

Opinion filed October 1, 1918.

From a judgment of the District Court of Ward County, Honorable
*K. E. Leighton,* Judge, dismissing an election contest, contestants
appeal.

Affirmed.

*Dorr H. Carroll* and *W. H. Sibbald,* for contestants and appellants.

"The objection that the action was not commenced within the time
limited can only be taken advantage of by answer." Comp. Laws 1913,
§ 7358.

The rules of practice, unless otherwise provided, are the same as pro-
vided by the Code of Civil Procedure. Comp. Laws 1913, § 1057.

Agents cannot delegate their authority without express permission
from their principals. Pickert v. Rugg, 1 N. D. 230; 31 Cyc. 1425
et seq; Comp. Laws 1913, § 6362.

A contest on the nomination to office must be commenced within the
time fixed by statute. Comp. Laws 1913, § 881; Olson v. Hoge, 23
N. D. 648.

In this case no separate canvass of the votes cast was ever made by
the canvassing board and filed as by law provided, and therefore the
canvass of the election was never completed and the statute had not
even begun to run. Comp. Laws 1913, §§ 872 and 873.

The affidavit of contest is full and complete and meets all require-
ments of the law. Dobson v. Lindekudgel (S. D.) 162 N. W. 391;
Griffin v. Wall, 32 Ala. 149; Sone v. Williams, 130 Mo. 530, 32 S. W.
1016; Marks v. Park, 7 Leg. Gaz. 55; Dobyns v. Weadon, 50 Ind. 298;

Hancock v. Hubbs, 98 N. C. 589, 3 S. E. 489; State v. Stimson, 98 N. C. 591, 3 S. E. 490; Oden v. Bates, 98 N. C. 594, 3 S. E. 491.

Because of no declaration by the canvassing board as to whom they decided were nominated to the various offices, as by law provided, the statute did not begin to run. Bowler v. Eisenhard (S. D.) 12 L.R.A. 705, 48 N. W. 136; Pol. Code, § 1998; Dobson v. Lindekugel (S. D.) 162 N. W. 391; 15 Cyc. 408; Barnes v. Gottschalk, 3 Mo. App. 111.

*McGee & Goss, Palda & Aaker,* and *F. B. Lambert,* for contestees and respondents.

After the official canvass was completed by the board, they issued and delivered certificates of nomination to these contestees, and the action of the board became a matter of public record, in the manner provided by law. Comp. Laws 1913, § 832.

The acts of this *de facto* board are conclusive upon contestants and upon the world. State ex rel. Bockmeier v. Ely, 16 N. D. 569, 14 L.R.A.(N.S.) 638; Lang v. Bayonne, 15 L.R.A.(N.S.) 93 and extensive note; 29 Cyc. 1390.

They cannot be attacked in a collateral proceeding like the one here. Cleveland v. McCanna, 7 N. D. 455; State ex rel. Bockmeier v. Ely, 16 N. D. 569; State ex rel. Erickson v. Burr, 16 N. D. 581.

The canvass of the votes was completed July 8th. This contest was not begun until eleven or twelve days thereafter. It came too late and the trial court was without jurisdiction to do other than to order its dismissal. Comp. Laws 1913, § 881; Oleson v. Hogy, 23 N. D. 648.

The primary election takes the place of nominating conventions under the former system. It operates like different elections or caucuses held throughout the state on the same day, for the purpose of using the same machinery, but remaining separate elections as to each party or principle. State ex rel. Miller v. Flaherty, 23 N. D. 313, 319, 41 L.R.A.(N.S.) 132; Johnson v. Grand Forks County, 16 N. D. 363; State ex rel. McCue v. Blaisdell, 18 N. D. 38, 40, 118 N. W. 141; State ex rel. Flaherty, 23 N. D. 313, 41 L.R.A.(N.S.) 132.

There must be a separate canvass of the separate returns as to each party. Comp. Laws 1913, § 873.

The statutory time limit is mandatory. Oleson v. Hogy, 23 N. D. 648; State ex rel. Anderson v. Falley, 9 N. D. 464.

CHRISTIANSON, J. This an election contest involving the nomination of the Republican candidates for members of the house of representatives for the 29th legislative district. The primary election was held on June 26th, 1918. In their notice of contest, the contestants state that the votes cast at such primary election for the parties to this contest were canvassed by the canvassing board, and that according to the report of said canvassing board the contestants and contestees herein received the following total votes at such election:

Anthony Walton ...................................... 1154 votes
Bert Solberg ........................................ 1124 votes
J. E. Erb .......................................... 1021 votes
George Reishus ...................................... 1505 votes
Ben Olson ........................................... 1387 votes
Guy Humphreys ....................................... 1244 votes
O. J. Cleven ........................................ 1278 votes

It is, also, alleged as a ground of contest that approximately four hundred and fifty illegal votes were cast, and "that had such illegal votes not been counted as aforesaid the contestants herein would have received majorities and would have been declared nominated." The only allegation in the notice of contest relating to the time when the county canvassing board completed its canvass is as follows: "That on the 26th day of June, 1918, the primary election was held; . . . that thereafter the votes cast for the respective parties hereto were canvassed, said canvass being complete on the 11th day of July, 1918."

The contest was instituted by service of notice of contest upon the contestees on July 20th, 1918. The contestees thereafter appeared specially, and so appearing objected to the jurisdiction of the court and moved for a dismissal of the contest proceeding, upon the ground that the same was not instituted within the time required by law.

The motion to dismiss was based upon the affidavits of the four contestees, to the effect that the canvassing board of Ward county had completed its canvass of the votes cast for all Republican candidates at the primary election, on and prior to the 8th day of July, 1918; and that on said 8th day of July, 1918, said canvassing board "did

certify and return and officially find and declare" that said contestees were the nominees of the Republican party for the offices of representatives for the 29th legislative district. And that on the. same day the county auditor of Ward county executed, and thereafter caused to be delivered to each of said contestees, the proper certificate of nomination in due form, as provided by law. The motion to dismiss came on for hearing on July 27th, 1918, pursuant to an order to show cause issued July 24th, 1918. Upon the return day, the parties appeared by their respective attorneys and proceeded to a hearing upon the motion to dismiss. No objection was made by either party to the procedure adopted. The contestants served and submitted in opposition to the affidavits of the contestees, the affidavit of Carroll, one of the attorneys for contestants, to the effect that he made inquiry from R. W. Kennard, the county auditor of Ward county, on July 13th, 1918, "as to the day of completion of the canvassing of the votes cast at the primary election held in said county and state, on the 26th day of June, 1918, and at said time was informed by the said R. W. Kennard that the canvass was completed on the 11th day of July, 1918." In such affidavit Carroll further states that he has made examination of the certificate of the county auditor wherein he certifies to the total votes cast by the Republican voters of Ward county at said primary election, and that such certificate bears date of July 13th, 1918; and that by inquiry from the members of canvassing board he has ascertained that "the books of said canvassing board were not returned to the county auditor's office until July 11th, 1918." It is further stated in said affidavit that one Tyler, who acted as a member of the canvassing board, as chairman of the Republican county central committee, was not in fact such chairman, or entitled to act as a member of the canvassing board.

Upon the hearing of the motion to dismiss, the contestees offered in evidence the original certificates of nomination issued to and received by each of them from the county auditor. All of said certificates bear date, July 8th, 1918. The contestees also offered in evidence the original abstract of the Republican votes cast at such primary election, and the following certificate of the county canvassing board attached thereto:

State of North Dakota, County of Ward.

Minot, N. D., July 8th, 1918.

We, the undersigned, do hereby certify that the within and foregoing abstract of votes cast at the primary election, held at the various election precincts of the county, is a true and correct abstract according to the returns made by the election boards of the various precincts. Witness our hands and seal of said county, the day and year first above written. [Signed] J. M. Rehe, Chairman County Commissioners. [Signed] W. W. Tyler, Acting Chairman Rep. Central Co. of Ward Co. [Signed] R. W. Kennard, County Auditor.

The record also contains a certificate from the county auditor of Ward county to the effect that this "certificate of the official canvassing board of Ward county, attached to and certifying the abstract of all Republican votes cast at the primary election within Ward county, North Dakota, according to the returns before said board . . . *was made, signed, and completed upon the completion of the canvassing of said votes and the returns by said county canvassing board on the date thereof, July 8th, 1918."*

The contestants offered in evidence certified copies of the certificates attached to the abstract of Democratic votes, and the abstract of nonpartisan votes for judge of the supreme court, state superintendent of public instruction, and county superintendent of schools. These certificates are dated July 11th, 1918. These certificates are accompanied by, or rather made a part of, the certificate of the county auditor, who certifies that such certificates are attached respectively to the "abstract of all Democratic votes," and the "abstract of all the nonpartisan votes" cast at said primary election; and that each of said certificates "was made, signed, and completed upon the completion of the canvassing of said votes and returns by said county canvassing board on the date thereof, July 11th, 1918." The county auditor's certificate further states that the certificates of nomination were mailed to the respective nominees, including the contestees, on the 15th day of July, 1918.

The trial court made an order dismissing the contest, and contestants appeal from the judgment of dismissal.

Two errors are assigned on this appeal: (1) That the court erred in admitting in evidence any statement or evidence whatsoever tend-

ing to controvert the allegations of the affidavit and notice of contest; and, (2), that the court erred in ordering a dismissal of the proceedings.

With respect to the first error assigned, we deem it proper to say that we are not prepared to place our approval upon the procedure adopted in this case. We have grave doubts as to the propriety of trying the question of whether the contest was instituted within the time allowed by a motion to dismiss, unless the jurisdictional defect appears in the contest notice itself. It would seem that where such defect does not appear in the notice of contest, but must be established as a fact in controversion of the allegations of the notice of contest, that the question is one properly raised by answer. But in the instant case the question of procedure is not involved. For the record shows that no objection was made, and that both parties proceeded under and acquiesced in the method of trial adopted. The contestees accepted the issue tendered, and served a counter affidavit, and upon the trial both parties offered evidence in support of their respective contentions. In fact the record shows that appellants' attorney in open court dictated the following stipulation into the record: "The contestants herewith stipulate that exhibits 5, 6, and 7 are part of the records of the county auditor's office, and as such may be received in evidence in this action, and show on their face what they are." Our maxims of jurisprudence provide that "he who consents to an act is not wronged by it." Comp. Laws 1913, § 7249. And that "acquiescence in error takes away the right of objecting to it." Comp. Laws 1913, § 7250. See also 4 C. J. 717 et seq. Manifestly the contestants in this case are precluded from assailing the propriety of the procedure adopted, or the admission of evidence which they stipulated might be admitted.

The remaining question to be considered is whether the trial court erred in holding, upon the record before it, that the contest had not been instituted within the time allowed by law.

The contest was instituted under § 881, Compiled Laws 1913, which provides: "Any candidate at a primary election desiring to contest the nomination of another candidate, or candidates for the same office, may proceed by affidavit within ten days after the completion of the canvass." The section also provides for the method of trial

of the contest, the rendition of judgment therein, etc. It further provides that "appeals to the supreme court . . . must be taken within ten days after notice of entry of final judgment and the party appealing must immediately procure the transmission of the record on such appeal to the clerk of the supreme court and such appeal may be brought on for hearing before the supreme court at any time such court shall be in session, upon five days' notice from either party; and the same shall be heard and determined in a summary manner, except as otherwise provided in this article."

Our statute provides that "the county canvassing board shall be composed of the clerk of the district court, county auditor, chairman of the board of county commissioners and the chairman of the county committees of the two political parties that cast the highest votes for governor at the preceding general election. *The members of said board shall meet in the county auditor's office in the courthouse at 10 o'clock on the eighth day after any primary election, and shall proceed,* after taking the usual oath of office, *to open and publicly canvass* the primary election returns made to the county auditor. Any three members of said board shall constitute a quorum and are authorized to make the canvass therein provided and to certify to the results thereof." Comp. Laws 1913, § 872.

It is further provided that "the canvassing board shall make and prepare a statement, the same to be signed by said board and filed in the office of the county auditor," containing, among other things, the names of all candidates voted for at the primary election, with the number of votes received by each and for what office and the names of the candidates nominated by each political party. And it is expressly provided that said statement shall *"be made separately as to each political party."* Comp. Laws 1913, § 873.

These provisions were part of the Primary Election Law enacted by the legislative assembly in 1907. In 1909 the legislature provided for a nonpartisan judiciary primary. Laws 1909, chap. 82. And in 1913 it provided for a nonpartisan nomination of candidates for the offices of state superintendent of public instruction and county superintendent of schools. Laws 1913, chap. 153. All of these nominations are made at the same time. The same election machinery is used. But the primaries of the different political parties are entirely distinct.

And the nonpartisan primaries are separate from those held by the different political parties. The participation of disqualified voters in the nomination of Republican candidates can have no possible effect upon the result of the Democratic primary. The canvass of the votes cast for Democratic candidates can have no possible bearing upon the nomination of Republican candidates. The two matters are entirely separate and distinct. The statute expressly requires a separate statement to be made for each political party, thereby clearly manifesting not only that a separate canvass shall be made, but that a separate declaration of result shall be made as to each political party.

The purpose and character of a primary election held under these statutory provisions is not a new question in this court. In considering this question in State ex rel. Miller v. Flaherty, 23 N. D. 313, 41 L.R.A.(N.S.) 132, 136 N. W. 76, the court said: "In our state the primary is the means of nomination of all officers, state, district, and county, as well as the method of choice by election, instead of nomination, of all party committeemen and delegates belonging to the party organization of those parties entitled to participate at the primaries. The election is held at public expense and is state wide, all nominations occurring throughout the state at the same election. In one sense the state-wide primary is a state-wide election. As to time and method used to accomplish the results it is such. But as to purpose and results achieved, as to nominations made, it is in no sense an election, unless it be a party or partisan election. . . . The mere fact that all political parties entitled to recognition under the primary laws as parties hold their party nominating election at which their respective party adherents may on the same day participate in their proper political parties in no wise changes the construction or effect to be given thereto from what it would have been had the legislature provided instead that, on the first Tuesday in May, the Republican party of the state should hold a party primary at which Republican electors only should be eligible to participate, to be held for the purpose of nominating the nominees of that party to be by said party presented to the state-wide electorate in the general fall election; and that on the second Tuesday in May a similar Democratic state-wide primary should be held open only to Democratic electors, whereby Democratic nominees should be chosen as nominees on the general

fall election ballot; and that on the third Tuesday in May the Socialist party should choose its nominees for office for the general fall election. . . . And the case at bar is exactly parallel with the one above assumed."

In Lew v. Montgomery, 31 N. D. 1, 5, 148 N. W. 662, this court said: "But a primary election is not an election within the meaning of such constitutional provision." (Section 47 of the state Constitution, which provides that each house of the legislature shall be the judge of the election returns and qualifications of its own members), "nor within the common acceptation of the term. It merely takes the place of the former nominating conventions, and it is improper to say that the successful candidate at such primary is elected to any office. He is merely placed in nomination as a candidate for election to the office."

As indicated in State ex rel. Miller v. Flaherty, supra, the primary election statute also provides for the selection at such primary of a committeeman from each precinct. The men so chosen, together with one to be chosen at large by each of certain specified "county nominees of each party," constitute the county committee of the party. And it is provided that such committeemen shall meet at the courthouse in each county on the third Wednesday after each primary election and organize by selecting officers and an executive committee, and adopting rules and modes of procedure. Such committee also selects the member or members of the state central committee. The persons so chosen from the respective legislative districts as members of the state central committee are required to meet at the state capital on the first Wednesday in September to organize and select officers, and, also, to promulgate and publish a platform or principle upon which the candidates of the party shall stand. Comp. Laws 1913, § 890. So it will be observed that the separate entity of the different political parties is carefully preserved by the primary election law. This is true from the beginning to the end. The voters of the different parties are registered separately, cast separate ballots, which are deposited in separate ballot boxes, separate returns are made by the election officers as to each political party, and, as already stated, these returns must be canvassed separately and a separate and distinct declaration made as to each party. Separate party organizations are

also-secured and maintained through party committees chosen at the primary election.

We are therefore of the opinion that when § 881, Compiled Laws 1913, provides that a candidate at a primary election may contest the nomination of another candidate "within ten days after the completion of the canvass," it has reference to the canvass of the votes of the particular political party on whose ticket the contestant sought nomination; or if the office involved is one to be filled by nomination and election upon the nonpartisan "judiciary ballot," or the "nonpartisan school ballot," that then it has reference to the completion of the canvass of the votes cast for the nomination of candidates upon such nonpartisan ballot. And while contestants in the court below and also in their brief on this appeal assert that the term, "the completion of the canvass," means the completion of the canvass of all votes cast for the candidates of all parties and upon all propositions submitted, and which the county canvassing board is required to canvass, this contention was not asserted with any degree of confidence on the oral argument. And it was frankly conceded that it was very doubtful if the construction contended for was correct.

It should be remembered that an election contest is a statutory proceeding, the purpose of which is to furnish a summary remedy and to secure a speedy trial. 15 Cyc. 399. The universal policy of laws providing for election contests is "to compel prompt action in hearing and disposing of contested elections, and statutory provisions requiring notice of contest to be given within a certain time from the date of the official count, or from the declaration of the result, or the issuing of the certificate of election or the like," are generally considered mandatory and jurisdictional. 15 Cyc. 399, 400; 9 R. C. L. 1169, § 157. It is suggested by contestants that the provision requiring a contest to be instituted within a certain time is in effect a statute of limitations, and hence must be asserted by answer, and if not so asserted will be deemed waived. The principle contended for has no application to a right of action created by statute. Ordinary statutes of limitations affect the remedy, and not the right of action. The statute before us created both the right and the remedy. And the institution of the proceeding within the time provided is an essential element of the right to maintain the proceeding at all. 25 Cyc. 1398.

As was said by the Supreme Court of the United States (Walsh v. Mayer, 111 U. S. 31, 37, 28 L. ed. 338, 340, 4 Sup. Ct. Rep. 260): "The provision requiring it to be asserted in a particular mode and within a fixed time are conditions and qualifications attached to the right itself, and do not form part of the law of the remedy. If it is not asserted within the permitted period, it ceases to exist and cannot be claimed or enforced in any form."

We have no hesitancy in holding that the contest must be instituted within ten days after the completion of the canvass within the meaning of that term as used in the statute, and that failure to institute the contest within that time is fatal to the right to institute a contest at all.

The question to be determined therefore is whether the evidence submitted upon the hearing, and the reasonable inferences which may be drawn therefrom, justified the trial court in holding that the contest had not been instituted "within ten days after the completion of the canvass."

We have already considered one of the appellants' contentions with respect to the meaning of the term "completion of the canvass," and found such contention to be without merit. It also appears from the record that in the court below the contestants further contended that the time in which to institute a contest did not commence to run until the certificates of nomination had been delivered to the different candidates nominated at the primaries. This contention is based upon subdivision 5, § 873, which provides that "it shall be the duty of the county auditor upon the completion of the canvass to mail or deliver in person to each candidate" nominated at such primary election a certificate of nomination.

In our opinion this contention is untenable, and is fully answered by what was said by the supreme court of South Dakota in disposing of a similar contention. The South Dakota court said: "The canvass of the vote and the issuance of the certificate of election are two entirely different acts and are performed by two different functionaries. The canvassing board has nothing to do but to canvass the vote and prepare and sign an abstract showing the number of votes cast. The certificate of election is issued by the county auditor after the canvassing board has determined who is entitled to such certificate,

and may not be issued until after the canvassing board has adjourned and gone out of existence." Dobson v. Lindekugel, 38 S. D. 606, 162 N. W. 391, 393.

Under the statute, the returns from the different election precincts are transmitted to, and filed in the office of, the county auditor, where they remain until the county canvassing board meets. Comp. Laws 1913, § 870. The county auditor is a member of the county canvassing board, and such board is required to meet *in his office* at a specified time for the purpose of openly and publicly canvassing the returns. Comp. Laws 1913, § 872. Hence, every person is afforded notice of the time and place of such canvass. In the case at bar, therefore, we have the following facts established by the record and the reasonable inferences to be drawn therefrom: Immediately after the primary election, the returns from the various precincts were returned to and filed in the county auditor's office. On the eighth day after the primary election, the county canvassing board met in the office of the auditor, and proceeded "to open and publicly canvass the primary election returns made to the county auditor." The county auditor was a member of the canvassing board. On the 8th day of July, 1918, the board had completed the canvass of the Republican votes, and on that day it promulgated its official declaration of the result of such Republican primary by signing the certificate provided for such purpose; on that same day, to wit, July 8th, 1918, the county auditor, basing his action upon the official declaration of the canvassing board, issued certificates of nominations to the various contestees as the nominees of the Republican party for the offices in question. Those facts are not denied, but admitted. It is presumed "that official duty has been regularly performed," and "that the law has been obeyed." Comp. Laws 1913, subds. 15 and 35, § 7936. The only reasonable inference which can be drawn from the facts recited is that the county canvassing board's returns as to the result of the canvass of the Republican votes were completed and certified to the county auditor on July 8th, 1918, and formed the basis for his action in executing the certificates of nomination dated on that day. It is true the county auditor has made no indorsement upon the abstract of Republican votes showing when it, and the certificates of the canvassing board attached thereto, was filed in his office. But it is equally

true that no such indorsement was made upon either the abstract of Democratic or the abstract of nonpartisan votes. And an examination of the abstracts of votes and certificates of the canvassing boards attached thereto which have been returned to the office of the secretary of state from several of the counties of the state show that not in a single instance was any such indorsement made.

Nor is the conclusion that the canvassing board had completed its canvass of the Republican votes on July 8th overcome by the statements in the affidavit of Carroll or the certificate of the auditor attached to such affidavit. Carroll, in his affidavit, says, that he made inquiry of the auditor, "as to the date of the completion of the canvassing of the votes cast at the primary election . . . and was informed by the said R. W. Kennard that the canvass was completed on the 11th day of July, 1918." The certificate of the county auditor attached to, and evidently intended to corroborate, the statement made in Carroll's affidavit, shows that on the 11th day of July, 1918, the county canvassing board signed the official certificates declaring the results of the canvass of the Democratic and nonpartisan votes. So far as the certificate shows, these were the only acts performed by the canvassing board on July 11th. In other words, the county auditors's certificate shows that on the 11th day of July, 1918, the county canvassing board signed the same certificates with respect to the Democratic and nonpartisan nominees, which it signed with respect to the Republican nominees on the 8th day of July, 1918. And it seems clear that if the certificate offered by the contestants is evidence of the fact that the canvassing board completed the canvass of Democratic and nonpartisan votes on July 11th, 1918, the certificate signed on July 8th, 1918, declaring the result of the Republican primaries, is evidence of the fact that the canvass of the Republican votes was completed on the 8th day of July, 1918.

Carroll's affidavit and the auditor's certificate attached thereto were evidently prepared on the theory which contestants then advanced that the canvass was not completed until the canvassing board had canvassed the votes and certified the results as to all tickets and all propositions submitted, i. e., completed all of its labors and gone out of existence. It will be noted that Carroll's affidavit makes no reference to whether the canvass of Republican votes was referred

to in the conversation between him and the county auditor.  So far as the affidavit and the certificate of the county auditor are concerned, the county auditor might have specifically informed him (Carroll) that the Republican votes had been fully canvassed and the result declared on July 8th, 1918, and certificates of nomination executed by the county auditor on that day.  In fact the record shows that, in the court below, contestants' attorney expressly disclaimed any intention of rebutting or disproving the auditor's certificates set forth in and made a part of the moving papers.

A careful consideration of the record leads us to the conclusion that the trial court was correct in holding that the contest had not been commenced within ten days after the completion of the canvass of the Republican votes.

The questions raised by the contestants with respect to whether there was in fact a canvassing board, or whether such board has ever completed a canvass, manifestly cannot be considered on this appeal.  These questions are not raised in the notice of contest, nor could they very well be set up as grounds of contest.  The contest is based upon the proposition that the canvassing board has completed the canvass and made its findings adversely to the contestants.  The contest is an attack upon the determination of the canvassing board.  By the plain words of the statute there can be no contest until the canvassing board has completed the canvass.  Hence, it is manifest that if the contestants are correct in their contention that the canvass has not in fact been made or completed, then manifestly the contest is premature, and should be dismissed.  Upon the record before us, however, and the allegations of the notice of contest itself it must be assumed on this appeal that the votes cast at the primary election held on June 26th last in Ward county have been properly canvassed by the canvassing board of that county.  And, as we have already indicated, the record in our opinion justifies the conclusion reached by the trial court that the contest was not commenced within the time allowed by law.  It follows from what has been said that the judgment appealed from must be affirmed.  It is so ordered.

Grace, J. (dissenting).  Section 881, Compiled Laws 1913, provides that a candidate at a primary election may contest the nomina-

tion of another candidate "within ten days after the completion of the canvass." As I view this provision and this law, it applies to the primary election as a whole, that the words "completion of canvass" means the counting and canvassing of all the votes cast at the primary election. It means the completion of the work of the canvassing board. The work of the canvassing board is not complete until all votes are counted and canvassed. When the canvass is complete as to all the votes, that point of time is when the Statute of Limitation commences to run with reference to the time of bringing the contest, and the canvass of the votes is only completed when the canvassing board has done its whole work as a board, and completed the canvass of all the votes cast at the primary election the votes of which are canvassed by such board.