STATE OF IOWA ex rel. GEORGE HATFIELD, Appellant, v. F. E. CARRINGTON, Appellee.

**ELECTIONS:** Nominations—Judicial Review. The decision of the official canvassing board as to who has been *nominated* at a primary election, is not reviewable by the courts.

*Appeal from Woodbury District Court.*—MILES W. NEWBY, Judge.

NOVEMBER 14, 1922.

THIS is a proceeding in quo warranto, whereby the relator challenges the right of the defendant to have his name appear upon the printed ballot at the coming election, as the Republican candidate for supervisor of the third district of Woodbury County. A demurrer to the petition being sustained, and the plaintiff refusing to plead over, his petition was dismissed, and he appeals.—*Affirmed.*

*Henderson, Fribourg & Hatfield,* for appellant.

*Alfred Pizey,* for appellee.

EVANS, J.—It is made to appear that both the relator and the defendant were candidates at the late primary election for such office, and that the judges of the election certified the result in favor of the defendant, as having been nominated by a majority of one vote. It was averred in the petition that two election votes were cast for the defendant which should have been rejected. The illegality charged against one voter was that he had not resided 10 days in the township nor 60 days in the county, prior to the date of the primary. The illegality

charged against the other voter, Mrs. Callavig, was that she was under 21 years of age. A recount appears to have been had, under the provisions of the statute, Section 1087-a18, before the board of supervisors, which resulted in confirming the certification of defendant's nomination. The question now presented is whether the courts of the state have any jurisdiction to hear and determine such a contest.

A primary election is not an election, within the meaning of the Constitution; nor is it such within any meaning known to the common law. It is purely a legislative creation, that involves neither life, liberty, property, nor franchise. It is enacted solely for the benefit of orderly procedure in the administration of political parties respectively, whereby each may select candidates for office, to be submitted to the consideration of all the electors at the general election. In its creation, the legislature was subjected to no constitutional inhibition; nor are its imperfections, if any, subject to attack on constitutional grounds. Prior to its legislative creation, the primary election never was or could be the subject of judicial cognizance; nor in its creation has the legislature conferred or taken away any right which has been heretofore, or can be hereafter, the subject of judicial cognizance, except so far as such right may be later conferred by legislation. The power of the legislature extends both to the rights created by it and to the remedy for their protection. This is the general purport of our previous holdings. *State v. Secretary of State,* 141 Iowa 196; *State v. Parker,* 147 Iowa 69; *Jones v. Fisher,* 156 Iowa 582.

Authorities from other jurisdictions are so nearly uniform on this question that it would be mere redundancy to cite them all. See the following: *Walls v. Brundidge,* 109 Ark. 250 (Am. Ann. Cas. 1915 C, 980, 985); *Ferguson v. Montgomery,* 148 Ark. 83 (229 S. W. 30, 34); *Lansdon v. State Board of Canvassers,* 18 Ida. 596 (111 Pac. 133, 136); *Brumleve v. Cronan,* 176 Ky. 818 (197 S. W. 498); *Foxwell v. Beck,* 117 Md. 1 (82 Atl. 657, 658); *Bradley v. Board of State Canvassers,* 154 Mich. 274 (117 N. W. 649, 652, 653); *Ramey v. Woodward,* 90 Miss. 777 (44 So. 769); *State v. Woodruff,* 68 N. J. Law 89 (52 Atl. 294), cited with approval in *In re Jamestown Caucus Law,* (R. I.) 112 Atl. 900, 901; *Brown v. Costen,* 176 N. C. 63 (96 S. E. 659,

660, 661) ; *State v. McLean,* 35 N. D. 203 (159 N. W. 847) ; *Walton v. Olson,* 40 N. D. 571 (170 N. W. 107) ; *State v. Joyce,* 87 Ohio St. 126 (100 N. E. 325) ; *In re Contest of Election of Ransley,* (Pa.) 111 Atl. 876 ; *Luther v. McClaren,* 87 W. Va. 133 (104 S. E. 294) ; *Leu v. Montgomery,* 31 N. D. 1, 5 (148 N. W. 662).

Two or three quotations from the foregoing citations will be a sufficient indication of the trend.

Quoting from *Lansdon v. State Board of Canvassers,* 18 Ida. 596 :

"Conventions have been recognized by statute, and indeed provided for in many states for years; and yet no one ever thought of providing for contesting the result of a convention, or having a recount of votes cast, or anything of that kind; and still it was recognized all along that many wrongs were committed and often fraud practiced in the holding of conventions. A primary election law is merely a substitute for a convention, and the only thing accomplished by it is that of selecting candidates for the several parties, whose names shall go on the official ballot for the general election."

From *Bradley v. Board of State Canvassers,* 154 Mich. 274 :

"The right to be declared the nominee of a party to a certain office is not the right to an office or a franchise nor is it a constitutional right. * * * The general election laws of the state are applicable to a primary election where such laws or their construction already given will not contravene the plain provisions and intent of such law, but to no greater extent. The general election laws know nothing about parties, except as printed upon a common ballot. The primary law is based entirely upon party recognition. Under the general election laws, an individual is given his remedy by quo warranto to try the title to an office to which he claims to be entitled. Under the primary election law, the party and the individual can only know whether a lawful nomination has been made by having recourse to a recount, and the legality of the votes cast for the candidates of a party can only be determined by the party enrollment, which has been made the basis of the proceeding from the beginning."

From *State v. Woodruff,* 68 N. J. Law 89 :

"Such a thing as a primary was not known at the common law. It is the outgrowth of modern convenience or necessity. A primary is not an election, in the sense of the common law; it is merely a method for the selection of persons to be balloted for at such an election. Prior to our primary acts, a primary had no legal status whatever. All it has now is statutory, and all the penalties for its violation must be found in the statute."

The provisions of our statute are to be found in Sections 1087-a18 and 1087-a19. It will be noted from the statute that the remedy provided against abuse of the primary election is vested, first, in the judges of election, and second, in the board of supervisors. The remedy is limited in its scope, and practical and expeditious in its operation. Both parties are permitted to name party challengers to attend the election; the challengers are permitted to challenge the votes on the ground of illegality; the judges have power to support the challenges; the judges do the counting of the ballots under the sanction of legal oath; their certification is subject to challenge before the board of supervisors on the ground of fraud and mistake in the counting; the board of supervisors, upon such challenge, are required to make a recount and to certify accordingly. As to the legality of votes, the decision of the judges of election is final. As to the correctness of the count, the decision of the board of supervisors is final.

The argument for the appellant is that the right to have his name upon the official ballot for the general election as the result of a primary election is a *franchise,* within the meaning of Section 4313 of the Code; that, therefore, quo warranto will lie, because the statutory remedy already noted does not purport to be exclusive. The argument may be conceded that, if the right of a candidate to have his name as party candidate upon the official ballot is a *franchise,* then quo warranto will lie. But we think that the premise cannot be sustained and is not sustained by the weight of authority. The loser at a primary election loses nothing in a legal sense, except it be a mere convenience. He is not thereby excluded from continuing his candidacy at the general election. All electors who wish to do so have a right to vote for him and to have their votes counted. His right in this respect is coextensive with the right of the winning can-

didate. True it is that his name must be *written* by the voter upon the ballot, whereas the winning candidate has his name conveniently printed. It is sadly true that the practical effect of this convenience is to draw by sheer force of gravitation the votes of those voters who either have no choice between candidates or do not know for whom they wish to vote. But these are considerations which are beyond judicial control. The fact remains that the legal right of the candidate to stand as such at the general election, and to have the votes in his favor counted, is precisely the same after the primary as it was before.

When it is considered that tens of thousands of candidates are voted for at the primary within the state, and that irregularities are the inevitable incidents of a primary election whose lines of demarcation as to political affiliations must always be indefinite and uncertain, the impossibility of extending judicial cognizance to the contests which would probably be presented is quite apparent. The trial of the contests would be largely the trial of moot questions, in that many, if not most, of the contestants who might win their contests before the court would still lose at the general election. The question to be decided in such a contest would be almost necessarily political: Had Democrats wrongfully called for and voted the Republican primary ticket? Had Republicans wrongfully called for and voted the Democratic ticket? Was the voter a Democrat? Was he a Republican? Was he an Independent? What was he last year? Did he in good faith change his political affiliations? etc., etc. All these questions would be proper for the consideration of the judges of the election. For the judges of the district and Supreme courts to take cognizance of them would be to contend with a flood.

Without further elaboration, it is sufficient to say that we are united in the view that the trial court properly dismissed the petition, and the judgment is affirmed.—*Affirmed.*

STEVENS, C. J., ARTHUR and FAVILLE, JJ., concur.