STATE of Oklahoma, on Relation of Floyd E. CARRIER, Dale J. Briggs and Dean H. Smith; and Floyd E. Carrier, Dale J. Briggs and Dean H. Smith, as Sponsors of Initiative Petition 253, State Question 357, Plaintiffs,

v.

STATE ELECTION BOARD OF OKLAHOMA and George D. Key, Stanley Neiswander and Leo Winters, Constituting said Board; and Andy Anderson, Secretary of the State of Oklahoma, Defendants.

No. 37626.

Supreme Court of Oklahoma.

Oct. 22, 1957.

Rehearing Denied Nov. 26, 1957.

Ladner & Livingston, Tulsa, for plaintiffs.

Mac Q. Williamson, Atty. Gen., of Oklahoma, Fred Hansen, First Asst. Atty. Gen., for defendants.

DAVISON, Justice.

This is an original proceeding in this court, brought by the plaintiffs, State of Oklahoma on relation of Floyd E. Carrier, Dale J. Briggs and Dean H. Smith, and the above named individuals as sponsors of Initiative Petition 253, State Question 357, against the defendants, State Election Board, George D. Key, Stanley Neiswander and Leo Winters, as members of said board and Andy Anderson, Secretary of State of Oklahoma. The relief being sought is a determination by the court that the affirmative vote of the people was sufficient for the adoption of the proposed initiative measure and the issuance by the court of such writs and orders as are necessary to require the defendants to so declare and certify. The question which was submitted and voted on at the regular general election on November 6, 1956, consisted of an amendment to 14 O.S.1951 § 1, known as the Congressional Redistricting Statute. A majority of those voting on the measure voted for its adoption but such vote was not a majority of the votes cast in the general election. Based upon such vote, the State Election Board certified the results thereof to the Governor who proclaimed the proposed enactment as rejected.

Plaintiffs' primary proposition, herein, is that, to be adopted, an initiated law need receive only an affirmative vote of those voting on the measure regardless of whether it was voted on at a general election or at a special election and regardless of what was the total number of votes cast at said election. The entire controversy hinges upon the interpretation of Article V, section 3 of the Constitution, which is as follows:

"Referendum petitions shall be filed with the Secretary of State not more than ninety days after the final adjournment of the session of the Legislature which passed the bill on which the referendum is demanded. The veto power of the Governor shall not extend to measures voted on by the people. All elections on measures referred to the people of the State shall be had at the next election held throughout the State, except when the Legislature or the Governor shall order a special election for the express purpose of making such reference. Any measure referred to the people by the initiative shall take effect and be in force when it shall have been approved by a majority of the votes cast in such election. Any measure referred to the people by the referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and not otherwise.

"The style of all bills shall be: 'Be it Enacted By the People of the State of Oklahoma.'

"Petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State and addressed to the Governor of the State, who shall submit the same to the people. The Legislature shall make suitable provisions for carrying into effect the provisions of this article."

Plaintiffs support their position by reliance upon statements of this court made in the case of State ex rel. Babb v. Mathews,

134 Okl. 288, 273 P. 352, 356, to the effect that "The words 'such election' and 'all elections,' used above, have reference to the election upon the special measure, which the people have petitioned the Governor to have submitted, and which has been submitted by the Governor". However, that case is not controlling here because, as pointed out in the case of State ex rel. Williamson v. Carter, 177 Okl. 382, 59 P.2d 948, 949, the initiated measure being considered in the Mathews case was, by a proclamation of the Governor, submitted at a special election (the primary election) and such election did not constitute the "next election held throughout the state" within the constitutional provision above quoted. In the Williamson case, it was held that the state election board was without authority to submit an initiated measure to a vote of the people at a run-off primary election, in the absence of a proclamation by the Governor authorizing such submission. The holding was in conflict with and superceded some of the statements contained, as dicta, in the case of Looney v. Leeper, 145 Okl. 202, 292 P. 365.

 By what was said and what was implied in the Williamson case, it is now a settled rule in this jurisdiction that, whether an initiated measure be a law or a constitutional amendment, it must be submitted to the people for their vote, at the next general election, with or without any act on the part of the Governor, or it may be submitted at any other time by the executive direction or proclamation of the Governor, whether or not the date of submission be the same date as that upon which a primary or run-off primary election is being held. If this latter situation prevails, the vote on the initiated measure is a separate and independent election, irrespective of the other election or elections being simultaneously held. To be approved and adopted thereat the measure need receive only a majority of the votes cast in that particular election on the particular measure so submitted.

 By virtue of the wording of the constitutional provision, an entirely different situation is presented when the initiated measure is voted upon at a regular general election. Then, the vote on the question is not a separate independent election but is merely one item in a single overall general election. This brings us to the crux of this litigation. Plaintiffs contend that the sentence in said section of the constitution as to the majority vote necessary for the adoption of an initiated measure means the same as the sentence specifying the majority necessary for the adoption of a referendum measure. In other words, the contention is that the phrase "a majority of the votes cast in such election," was intended by the framers of the constitution to have the same meaning as the phrase "a majority of the votes cast thereon." The issue has not heretofore been before this court for determination. Some of the statements, made as dicta in the cases above cited or therein referred to, tend only to confuse.

In considering the question, we must be watchfully cognizant of the difference between a measure voted upon under the power if the initiative and one voted upon under the power of the referendum.

"Initiative means the power of the people to propose bills and laws, and to enact or reject them at the polls, independent of legislative assembly while referendum is the right (of) the people to have submitted for their approval or rejection an act passed by the legislature." Wyatt v. Clark, Okl., 299 P.2d 799, 800.

Thus, in an election on an initiated measure, the voters are called upon to vote for or against a new law. In an election on a referred measure, they are called upon to vote for or against a veto of a law already enacted by the legislature which, except for the reference, would have become effective. In the first instance, the *yes* vote is the affirmative vote for the legislation but, in the latter instance, the *no* vote **is**

the affirmative vote for the veto. With this analysis, it becomes apparent that the yes vote, on the one hand expresses the desire of the people to act while, on the other hand, the yes vote expresses the desire of the people not to act. Under such circumstances, it is logical to conclude that the framers of the constitution had reason to and did consider it necessary to provide that one standard should be used in determining whether or not an initiated measure received a majority vote and that another should be used in cases of referred matters. The wording of the constitutional provision above quoted indicates that it was intended thereby to require an affirmative vote by the majority of all electors casting votes at a general election in order to adopt an initiated measure, submitted as an item of that general election.

 Such has been the interpretation given to said section by the ministerial officers whose duty it is to declare the results of such elections. Initiative Petitions numbered 166 and 176, submitted at the 1940 general election, each received a majority of the votes cast thereon but neither received a majority of the votes cast in said general election. Both were declared rejected and have been so considered since. Our determination of the intent of the framers of the constitution as expressed in Article V, section 3 thereof, discussed in the preceding paragraph above, when augmented by the administrative interpretation of the section and acquiesence in such interpretation, furnishes a well established rule of construction of constitutional provisions, for "the object of construction, applied to a constitution, is to give effect to the intent of its framers and of the people adopting it, and when the text of a constitutional provision is not ambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument." Also "the long and continued interpretation of the constitution by * * * acquiescence is an aid in removing doubt as to the meaning of such constitutional provisions as intended by the framers thereof." Latting v. Cordell, 197 Okl. 369, 172 P.2d 397, 400.

Although not discussed at length, it was held, in the case of In re Initiative Petition No. 2, 26 Okl. 548, 109 P. 823, that bills or acts initiated by the Legislature or by the people by an initiative petition before taking effect, must be approved by a majority of the electors voting at such election. Our reasoning, as hereinabove outlined, leads to the same conclusion here. The initiated measure, being submitted to the people at a general state-wide election and receiving less than a majority of the votes cast in said election, was rejected, although it did receive a majority of the votes cast thereon. The election board was correct in so holding.

Judgment is for defendants.