Walt ALLEN et al., Applicants,

v.

William A. BURKHART, State Treasurer of the State of Oklahoma, et al., Respondents.

No. 40364.

Supreme Court of Oklahoma.

Dec. 22, 1962.

Rehearing Denied Jan. 15, 1963.

As Corrected Jan. 17, 1963.

WILLIAMS, Chief Justice.

Applicants have brought this original action seeking a judicial determination that Initiative Petition No. 271, State Question No. 408, which proposed a constitutional amendment, was not legally approved by a vote of the people of Oklahoma on November 6, 1962.

■ If such proposed amendment was not approved they ask the issuance of appropriate writs to protect their claimed rights. This court has jurisdiction in a proper proceeding to determine whether the Constitution has been amended. State ex rel. Hayman et al. v. State Election Board et al. (1938), 181 Okl. 622, 75 P.2d 861, 862. The matter here presented for our consideration poses an important problem of public law. We have, therefore, assumed jurisdiction of appellants' first cause of action. See State ex rel. Williamson et al. v. Carter et al., 177 Okl. 382, 59 P.2d 948, 949, and State ex rel. Carrier v. State Election Board of Oklahoma, Okl., 318 P.2d 422.

The proposed amendment would create a Legislative Apportionment Commission, and authorize it to carry into effect our present State Constitutional formulae for reapportionment of our House of Representatives and State Senate.

· We have already upheld the sufficiency of the petition involved in this case. See In re Initiative Petition No. 271, State Question No. 408, Okl., 373 P.2d 1017. ·

In the present case our concern is whether the amendment therein proposed was approved.

■ In our State Constitution, the people vested in the Legislature the Legislative authority of the State. Art. V, § 1. But, in the same section, they reserved the power to propose laws and amendments to the Con-

.stitution and to enact or reject the same at the polls independent of the Legislature.

Also, in Article XXIV, Constitutional Amendments, by Section 3, the people again expressed their right to amend the Constitution by initiative petition therefor.

Much of our discussion in this opinion relates to Section 3 of Article V. In pertinent part it is as follows:

"* * * All elections on measures referred to the people of the State shall be had at the next election held throughout the State, except when the Legislature or the Governor, shall order a special election for the express purpose of making such reference. Any measure referred to the people by the initiative shall take effect and be in force when it shall have been approved by a majority of the votes cast in such election. Any measure referred to the people by the referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and not otherwise.

\*      \*      \*      \*      \*      \*

"Petitions and orders for the initiative and for the referendum shall be filed with the Secretary of State and addressed to the Governor of the State, who shall submit the same to the people. The Legislature shall make suitable provisions for carrying into effect the provisions of this article."

Pursuant to the duty imposed upon the Legislature to "make suitable provisions for carrying into effect the provisions" of Article V, that body has enacted Title 34 Oklahoma Statutes 1961, Initiative and Referendum §§ 1 to 66, vitalizing and implementing the Article. See Ex parte Wagner, 21 Okl. 33, 95 P. 435, 18 Ann.Cas. 197, and Simpson v. Hill et al., 128 Okl. 269, 263 P. 635, 644, 56 A.L.R. 706.

34 O.S.1961 § 25 provides:

"Whenever. any measure shall be initiated by the people in the manner provided. by law, or whenever the referen-

dum .shall be demanded against any measure passed by the Legislature, same shall be submitted to the people for their approval or. rejection at the next regular election; provided, the Governor shall have power, in. his. discretion, to call a special election to vote upon such questions, or to designate the mandatory primary election as a special election for such purpose."

From an examination of a portion of Section 3 of Article V, above quoted, it is to be seen that the Governor may submit a measure such as the item (constitutional amendment) presently here involved to a vote of the people either at "the next election held throughout the State" or at a special election ordered "for the express purpose of making such reference."

It is to be noted that reference of an initiated measure to the electors pursuant to the terms of Art. V,. Sec. 3, "shall be had at the next election held throughout the State * * *", while 34 O.S.1961 § 25, provides that such measure "shall be submitted * * * at the next regular election * * *." Although the descriptive language contained in these two provisions does differ, the phrases are synonymous and both denote the next regular general election as designated and defined in 26 O.S. 1961 § 1. See State ex rel. Williamson et al. v. Carter et al., supra, 59 P.2d at p. 950.

It will be recalled that another part of Art. V, Sec. 3 above quoted provided for an initiative measure to take effect " * * * when it shall have been approved by a majority of the votes cast in such election * * *."

In the State ex rel. Carrier case, supra, there was involved a determination by the Court as to whether the affirmative vote of the people on an initiative measure, as .distinguished from a majority of the votes .cast in .the 1956 general election when the measure was voted upon, was sufficient for the approval of an amendment to the Congressional Redistricting Statute.

■■ In the third paragraph of the syllabus of such case we held:

"In order to be adopted, an initiated measure, submitted to the people for adoption or rejection at a general election, must receive an affirmative vote by a majority of the electors casting their vote in said general election. Constitution, Article V, Section 3."

On the other hand, in that case the Court further said:

"If this latter situation" (i. e. the date of submission is the same date as that upon which a primary or runoff primary is being held) "prevails, the vote on the initiated measure is a separate and independent election, irrespective of the other election or elections being simultaneously held. To be approved and adopted thereat the measure need receive only a majority of the votes cast in that particular election on the particular measure so submitted."

On September 27, 1962, the Governor, with reference to the initiative petition involved in this case, proclaimed that (a) Question No. 408, "shall be submitted to the qualified electors * * * for their approval or rejection at a special election to be held * * * on November 6, 1962", and (b) the election officials are "authorized, directed and ordered" to conduct on that date a special election on State Question 408. It is noted that the date fixed in the proclamation, being "the first Tuesday succeeding the first Monday in November" of an even numbered year, was coincidentally the same day as that by law designated as the day upon which the "regular general election" should be held.

State Question No. 408 was submitted and voted upon in all the precincts throughout the State on said November 6, 1962. A majority of those electors who voted upon the measure voted in favor of its approval. However, the aggregate number of affirmative votes fell short of a majority of the total number of ballots cast throughout the State in the general election (after deducting therefrom spoiled ballots), some 27,000 or more.

The Governor on November 9, 1962, proclaimed the proposed measure to have been approved by the people as a constitutional amendment. Following this proclamation, the Legislative Apportionment Commission was convened and promulgated an Order of Apportionment, and, as provided in the initiated measure, filed the same with the Secretary of State.

Respondents insist that the measure in question was voted upon at a special election.

On the other hand, applicants assert that the Governor acted without lawful authority in purportedly calling such attempted special election. They assert that the Constitution conferred no power upon the Governor to call a special election upon such initiated measure for and upon a day which coincidentally was the regular general election day and thereby, as to that item of especial interest to him, convert such general election into a special one.

They argue that this measure was submitted to the people at the general election on November 6, 1962, by direct operation of law.

■ In the case of Simpson v. Hill, supra, this court said:

"It is clear that such initiative measures must *go to* the next regular general election held throughout the state, unless the Governor or the Legislature shall order that it be submitted at a special election." (Emphasis supplied.)

In State ex rel. Carrier v. State Election Board, supra, we said:

"By what was said and what was implied in the Williamson case, it is now a settled rule in this jurisdiction that, whether an initiated measure be a law or a constitutional amendment, it *must be submitted to the people for their vote, at the next general election, with or without any act on the part of the Governor, or it may be submitted at any other time* by the executive di-

rection or proclamation of the Governor, whether or not the date of submission be the same date as that upon which a primary or run-off primary election is being held * * *." (Emphasis supplied.)

The constitutional amendment in question stood submitted at the general election on November 6, 1962, for approval or rejection by the people by the distinct and inexorable command of the Constitution as implemented by the vitalizing legislative enactment, except for any effect achieved by the proclamation calling for a special election on the same date.

Thus it is seen that the Governor may call for a vote upon an item such as here involved at the next general election on the one hand or at a special election upon any date suitable, in his discretion, with the exception of the general election day itself.

The matter of such exception is the principal issue in this case.

May the Governor lawfully pluck an initiated measure from among those set upon the general election ballot, set it aside for consideration at the same time and by the same voters and, by the simple expedient of calling that part of the election occurring on such initiated measure a special election, make it a special election?

Respondents argue that this Court should determine that there would be no different method of counting the votes cast on the initiated measure in question at a special election whether such special election were conducted on the day of the general election or at some other time and that, therefore, we should hold in this case that (a) the purported calling of the special election and conducting of the alleged special election involved in this case on November 6, 1962, was lawful in all respects and that (b) the proclamation of the Governor declaring that Initiative Petition No. 271, State Question No. 408, had received more yes votes than no votes and that it had been approved, was lawful.

For the reasons hereinafter discussed, we decline to so hold.

In the first place, it is to be observed that in such vitalizing legislation, the Legislature, in referring to the election days on which a special election might be called mentioned specifically only the mandatory primary election.

It has been noted that Art. V, Sec. 3 of the Constitution states in part that : " * * * the Legislature shall make suitable provisions for carrying into effect the provisions of this article."

It is also to be noted, however, that the Legislature in enacting the vitalizing statute (34 O.S.1961 § 25) and in mentioning "the mandatory primary election" did not have specific authority given it by the Constitution to limit the Governor to calling a special election on some day other than general election day.

In the case of Tate v. Logan, Okl., 362 P.2d 670, in the first paragraph of the syllabus this Court said:

"Our constitution vests in the Legislature the supreme power to enact laws to meet the needs of the State, and its acts should be upheld unless plainly and clearly within the express prohibition and limitations fixed by the constitution. There is a presumption that an act is constitutional."

Assuming without deciding that the Legislature could so limit the Governor, if it so intended, we move to the matter of whether it did so apparently intend.

As an indication of the interpretation placed by the Legislature on the responsibilities and duties with which it was charged by the provisions of Article V, Section 3 of the Constitution, it is noted that at page 441 of the laws of 1907–08, now Title 34 O.S.1961 Initiative and Referendum, Section 2, in setting out the form to be substantially followed in drawing an initiative petition, it was provided that the signers thereof would "respectfully order that the following proposed * * *

amendment to the constitution * * * shall be submitted to the legal voters of the State of Oklahoma * * * for their approval or rejection at the regular general election * * *, to be held on" a designated date; and further that the signers of Initiative Petition No. 271, State Question No. 408, did so "respectfully order that the following proposed amendment to the Constitution shall be submitted to the legal voters of the State of Oklahoma for their approval or rejection at the regular general election, to be held on the 6th day of November, A. D. 1962, or a special election which might be called for said purpose, * * *".

Argument is advanced that the mention of the mandatory primary election in the quoted portion of the statute (34 O.S.1961 § 25) excludes the general election.

In the case of St. Louis-San Francisco R. R. Co. v. McIntosh, County Treas., 103 Okl. 246, 229 P. 1064, 1067, we said:

"* * * It is a general principle of interpretation that the mention of one thing implies the exclusion of another thing; * * * The affirmative description of the cases in which the jurisdiction may be exercised implies a negative on the exercise of such power in other cases * * *. In the case of Ex parte Ballew [20 Okl.Cr. 105], 201 P. 525, the Court of Criminal Appeals said: 'Applying the rule of statutory construction "expressio unius est exclusio alterius", the affirmative description and enumeration of the acts constituting contempt implies a negative as to the exercise of such power in other cases not enumerated'".

The very proviso in the legislative Act which vitalizes Art. V, Sec. 3, affords us an eloquent indication of the restricted scope of the power conferred upon the Governor. Its terms, "* * * the Governor shall have power, in his discretion, to call a special election to vote upon such questions, or to designate the mandatory primary election as a special election for such purpose", do not enumerate the general election as one which may be proclaimed by executive action as a special election on an initiated measure.

"The true office of a proviso is to restrict or make clear that which has gone before", Welch v. Key, Okl., 365 P.2d 154, 159. The mention of one thing implies the exclusion of another. We conclude that a special election upon an initiated measure may be called by the Governor only for a date prior to the general election, at which time otherwise the submission becomes mandatory by operation of law and "with or without any act on the part of the Governor", provided same is ready for submission. State ex rel. Carrier v. State Election Board, supra.

Since statehood, thirty-four initiative petitions have been voted upon at regular general elections. Only four of such petitions have received a majority of all the votes respectively cast at said general elections. Eleven of such petitions have received a majority of the "yes" and "no" votes cast on the measures proposed by such petitions. It is to be noted that none of the fifteen Governors who preceded the present one and several of whom were members of our constitutional convention, ever proclaimed a special election on the date of the regular general election for the purpose of voting on any of the said thirty-four initiative measures. In the past many initiative measures have been voted upon by the people at special elections called by the different Governors prior to this instance, but none at special elections purportedly set on the date of a regular general election.

The Attorney General, in brief, refers to opinions by him in 1946 to the State Superintendent of Public Instruction and the then Governor. The Governor had inquired if he could issue a proclamation calling a special election at the time. of the general election on four initiative petitions. The Attorney General in opinions to both officials held, in effect, that on the date of the general election a special election could

not legally be called for the purpose of voting on initiative petitions.

In the case of State ex rel. Carrier v. State Election Board supra, we said:

"Our determination of the intent of the framers of the constitution as expressed in Article V, section 3, thereof, discussed in the preceding paragraph above, when augmented by the administrative interpretation of the section and acquiescence in such interpretation, furnishes a well established rule of construction of constitutional provisions, for 'the object of construction, applied to a constitution, is to give effect to the intent of its framers and of the people adopting it, and when the text of a constitutional provision is not ambiguous, the courts, in giving construction thereto, are not at liberty to search for its meaning beyond the instrument.' Also 'the long and continued interpretation of the constitution by * * * acquiescence is an aid in removing doubt as to the meaning of such constitutional provisions as intended by the framers thereof.' Latting v. Cordell, 197 Okl. 369, 172 P.2d 397, 400." See also Oklahoma Tax Commission v. Liberty National Bank and Trust Co., etc., Okl., 289 P.2d 388 and Williams v. Continental Const. Corp., 168 Okl. 510, 34 P.2d 254.

We find that the administrative interpretation of the portion of Article V, Section 3, Oklahoma Constitution, involved in the determination of the answer to the principal issue in this case supports our conclusion above stated. We believe it appropriate to observe that the people of Oklahoma have accepted this interpretation.

The purpose of calling a special election on an initiated measure would appear to be that it would afford the people an opportunity to vote on such item either at an earlier date than that of the general election or at an election at which the inaction of electors not voting for or against the item would not count against it, or both.

It is noted that without affording the people an opportunity for an early vote on an initiated measure, the Governor, by calling a special election on such an item on the day of the general election, and not calling a special election on another such item, could thereby discriminate in favor of the one and against the other.

At the regular biennial general election when the voters receive their several ballots they have the right to freely give such consideration as they desire to all proposed constitutional amendments appearing on the ballot, as if they were normally submitted at such general election then and there being conducted, without the confusion or complication of being required to consider one such amendment as if it were in some manner segregated from the general election and being then and there submitted at a so-called separate special election. There is no authority for any such segregation or separate special election by Executive Proclamation, or by order of election officials.

Referring to the case of State ex rel. Babb v. Mathews, Judge et al., 134 Okl. 288, 273 P. 352, respondents contend that: "this case adds the significant finding that a Governor could call a special election at the next election held throughout the State or to put it otherwise at an election other than a special election, and when he does the majority rules." This Court in the Mathews case held that the State Election Board had authority to submit an initiative measure to a vote of the people at a special election conducted on the date of the primary because the Governor had issued a proclamation calling a special election for such date. The question of whether a special election could be held on an initiated measure at the regular general election was not before the Court.

In the case of State ex rel. Carrier v. State Election Board, supra, we said:

"Plaintiffs support their position by reliance upon statements of this court made in the case of State ex rel. Babb

v. Mathews, 134 Okl. 288, 273 P. 352, 356, to the effect that 'The words "such election" and "all elections" used above, have reference to the election upon the special measure, which the people have petitioned the Governor to have submitted, and which has been submitted by the Governor'. However, that case is not controlling here because, as pointed out in the case of State ex rel. Williamson v. Carter, 177 Okl. 382, 59 P.2d 948, 949, the initiated measure being considered in the Mathews case was, by a proclamation of the Governor, submitted at a special election (the primary election) and such election did not constitute the 'next election held throughout the state' within the constitutional provision above quoted * * *."

Such case is not authority, as contended, for "sustaining the action of a Governor calling a special election on the same day as the next election held throughout the State."

■■■ Respondents argue that the applicants herein have been guilty of unethical conduct in failing to re-apportion according to our State Constitution and in allegedly delaying other lawsuits concerned with this proposed amendment. The conduct of the applicants is not an issue in this case. Applicants by their conduct cannot confer upon the Governor power which the Constitution did not grant to him.

■■■ Respondents contend that "a timely action in mandamus would have been the proper remedy when the special election proclamation was made, if it was invalid as contended, to require the election officials to put the question to the people at the general election." They argue that this attack comes too late, and that the applicants have been guilty of laches. We do not agree.

In the case of In re Initiative Petitions, etc., 153 Okl. 205, 6 P.2d 703, we said:

"When the copy of the petitions were filed in the office of the secretary of the state, and thereafter signed by what seemed to be a sufficient number of the voters of the state to initiate the measure, it placed in motion the process of the people's exercising their reserved legislative power, and a court of equity, as a general rule, will not assume, in advance, jurisdiction to determine whether the proposed act, if adopted, is submitted and adopted in accordance with the law governing the same."

See, also City Council of City of Mc-Alester v. Milwee, 31 Okl. 620, 122 P. 173, 40 L.R.A.,N.S., 576. See also Associated Industries of Okl. v. Okl. Tax Comm., 176 Okl. 120, 55 P.2d 79.

Respondents further argue "that it would be a violation of the rights of the citizens of Oklahoma, secured to them by the equal protection clause of the Fourteenth Amendment to the United States Constitution, to hold that State Question 408 did not receive the requisite vote for passage." They argue that to "count the votes of citizens who did not cast a ballot on the special measure as being against the measure, is, we submit, as much an impairment of the right to vote as if the ballot box had been stuffed with a like number of no votes." Such argument is contrary to our holding in State ex rel. Carrier v. State Election Board, supra. Respondents cite no cases holding such opinion to be in violation of the Fourteenth Amendment of the United States Constitution.

Their real contention is that in the face of the Fourteenth Amendment a State is powerless to require that its own constitutional amendments be adopted by an affirmative vote of more electors than a simple majority of those who cast a ballot upon a proposed amendment. They cite no decisions in support of the precise proposition so raised.

■■■ As a general rule it may be said that in its internal administration the state has an entire freedom of choice within the limits circumscribed by the Fourteenth Amendments' inhibition against invidious discrimination.

The provisions of Art. V, Sec. 3, and 34 O.S.1961 § 25, as construed by this court are neither discriminatory on their face nor in their application. There is no showing here of an invidious discrimination against any group of voters; neither has it been demonstrated that anyone, or any group, is sought to be singled out for prejudicial treatment, or one that is different from that which the state law usually accords.

We hold that our construction of Art. V, Sec. 3, and the vitalizing statute does not operate to deprive any elector, or group of electors, of rights protected by the Fourteenth Amendment to the Federal Constitution.

Amici curiae argue that a special election may be held on the same day as a general election day. They cite authorities from other jurisdictions concerning local elections and other matters not pertinent to this discussion which seem to be contrary to our view but upon a closer examination do not appear to fit the situation herein involved, when viewed in the light of our applicable constitutional and statutory provisions.

For the reasons hereinbefore set forth, absent specific authority therefor in Section 3 of said Art. V, we hold the Governor may not lawfully call a special election on an initiated measure on and for a day which coincidentally is general election day.

We conclude that State Question 408 voted upon on November 6, 1962, stood submitted at the general election on that date by direct operation of law. The Governor's proclamation purporting to submit the question at a special election was more surplusage and did not alter the character of the election so held.

State Question No. 408 is hereby declared to have failed of adoption for lack of sufficient affirmative votes.

Writ granted.

BLACKBIRD, V. C. J., and WELCH, DAVISON, HALLEY, and JOHNSON, JJ., concur.

JACKSON and IRWIN, JJ., concur specially.

BERRY, J., dissents.

JACKSON, Justice (concurring specially).

For convenience I quote from Art. 5, Sec. 3, Okla.Const., and divide its provisions into separate subject matter, as follows:

(a) * * * "All elections on measures referred to the people of the State shall be had at the next election held throughout the State,

(b) "except when the * * * Governor shall order a special election for the express purpose of making such reference.

(c) "Any measure referred to the people by the initiative shall take effect and be in force when it shall have been approved by a majority of the votes cast in such election."

This court has consistently held that in order for an initiated constitutional amendment to be adopted at a general election it (the amendment) must have been approved by a majority of the votes cast in such election. In re Initiative Petition No. 2 (1910), 26 Okl. 548, 109 P. 823; State ex rel. Hayman et al. v. State Election Board (1937), 181 Okl. 622, 75 P.2d 861; and State ex rel. Carrier v. State Election Board (1957), Okl., 318 P.2d 422. I also believe that we have consistently held that when a measure is submitted at a special election that only an affirmative vote of the majority of those voting for the measure is required for its adoption.

I have had some difficulty in trying to determine why there is or should be a different quantum of an affirmative vote to effect adoption of an initiated measure submitted at a general election from that which governs at a special election. 1

have reached the conclusion that our constitution and statutes make no difference in the affirmative vote required whether the amendment be submitted at a general or special election. In either event subdivision (c), supra, of Art. 5, Sec. 3, requires that the measure "shall take effect and be in force when it shall have been approved by a majority of the votes cast in such election."

If an amendment or measure is submitted at a special election and the proposed amendment is the sole issue or matter to be considered, then a majority of those voting for the measure will also constitute a majority of the votes cast in such election, and the amendment will have been adopted. Whether two or more constitutional amendments may be submitted at the same special election and be adopted by the simple majority of those voting on any one of the amendments without considering the votes cast for or against the others is not an issue in this case. But see Art. 24, Sec. 1, Okla.Const.

I have been unable to find a clear statement in any of our former decisions as to why "a majority of the votes cast in such election" is required. In Atwater v. Hassett et al. (1910), 27 Okl. 292, 111 P. 802, Justice R. L. Williams (a member of the Constitutional Convention) quoted extensively from an early Alabama case, May & Thomas Hardware Co. v. Mayor, et al. of Birmingham, 123 Ala. 306, 26 So. 537. The Alabama Constitution, like ours, required a majority of the votes cast in the election. The Alabama Court seems to say that the framers of the Alabama Constitution wanted the affirmative assent or consent of all those attending and participating in the election in order to adopt an amendment to their constitution. Since the framers of our constitution have used the same language as was used by the framers of the Alabama Constitution the language from the Alabama case, as quoted by Justice Williams, may be helpful here.

"* * * This proposition takes no account of the consideration that, un-

der any possible form of submitting a proposed amendment to the people, every elector who votes for a state or county office at the election must, through the operation of the constitution itself in effect, vote for or against the amendment. Article 17, § 1, provides, as we have seen, that an amendment must receive 'a majority of all the qualified electors of the state who vote at' the general election to which it is submitted—a majority, not of those who vote on the amendment, but of those who deposit ballots for any purpose. Hence it is that, if an elector votes for a state or county office, he necessarily votes on the amendment, for, though his ballot contains no reference to the amendment, he is counted against it. So that by the terms of the Constitution itself he is deprived of the right to refrain from voting on an amendment if he votes for any state or county office * * *."

In the Governor's brief it is insisted that the case of State ex rel. Babb v. Mathews (1929), 134 Okl. 288, 292, 273 P. 352, is authority for the proposition that where an initiative measure is submitted by the Governor and a majority of the votes cast upon the question submitted is in favor of its adoption, it is only necessary that such measure receive a majority of all votes cast upon the specified measure in order to be legally adopted. Obviously the case does so hold. If the holding in that case can be justified it is for the reason that the statute, 34 O.S.1961, Sec. 25, authorizes the Governor "to designate the mandatory primary election as a special election", and for the further reason that a primary election, in the true sense, is not an election. State ex rel. Williamson v. Carter (1936), 177 Okl. 382, 59 P.2d 948. In that case we quoted from State ex rel. Hatfield v. Carrington, 194 Iowa 785, 190 N.W. 390, to the effect that a primary election is not an election within the meaning of the constitution nor un-

der the common law, but is purely a legislative creation enacted solely for the benefit of orderly procedure in the administration of political parties, whereby each may select candidates to be submitted to the electors at the general election. We concluded in the Williamson case that the purpose of the constitutional provision requiring initiated measures to be submitted at the next election held throughout the State was to submit initiated measures "at a time when the people of all political parties were permitted to congregate at a particular time and place in the orderly conduct of their government". We held that the words "next election held throughout the State", as used in Art. 5, Sec. 3, supra, meant the next general election as used in Art. 24, Sec. 1, Okla.Const. See also Updegraff v. Gary (1956), Okl., 298 P.2d 404, and cases cited and discussed therein.

If we now hold under State ex rel. Babb v. Mathews that an initiated constitutional amendment may be adopted by a majority of those voting for the measure at a general election, or at a purported special election conducted in connection therewith, then we will have almost completely eroded away the proviso which requires an affirmative vote of those voting at the election, and will have overrruled In re Initiative Petition No. 2; State ex rel. Hayman, and State ex rel. Carrier v. State Election Board, supra, on the point at issue.

It is said in effect in argument that while Art. 5, Sec. 3, requires initiated constitutional amendments to be submitted at the next election held throughout the State, the exception to that proviso authorizes the Governor to order a special election for the express purpose of making such reference. The exception actually sought is not as to the *time* of holding the election, but an exception to the constitutional provision which requires that an initiative measure to be adopted must be approved by a majority of the votes cast in such election. I have been unable to determine how we may nullify this requirement

of the constitution by the simple expedient of calling a general election a "special election". I agree that this requirement in our constitution requiring a majority of the votes cast in such election to adopt an initiated measure is burdensome, expensive, and encourages strife and litigation among our people. In light of these considerations I doubt if it is worth what it is costing. However, it is not the function of courts to make constitutional law but to interpret and declare what they see.

Believing as I do that the Governor is not authorized to convert a general election into a special election for submission of an initiated measure, or to take an initiated measure out of "the next election held throughout the state", I must and do agree with the majority of my associates that State Question No. 408 was not adopted on November 6, 1962, and that the writ should be granted.

I am authorized to say that WELCH, J., concurs in the views herein expressed.

IRWIN, Justice (concurring specially).

Respondents and Amici Curiae have submitted citations from other jurisdictions which they contend sustain the proposition that Initiative Petitions to amend the Constitution of the State of Oklahoma may be submitted to the people at either general elections or a special election held on the same day as the general election by a Proclamation of the Governor, and I deem it appropriate to consider these cases in conjunction without constitutional provisions.

Cited as authority is In re Todd, 208 Ind. 168, 193 N.E. 865, wherein the Supreme Court of Indiana said:

"* * * in the absence of some constitutional requirement that proposals to amend (Constitution) be submitted at general elections the General Assembly cannot, by providing for submission at such time, overturn the result of the voters' decision on the adoption of amendment by requiring such adop-

tion to depend upon the vote on political candidate."

Amici Curiae state that the above case further holds that this was true "even though the submission be on the day of a general election and even though the machinery at the general election be used to poll, canvass, and return the votes cast on the election on the amendment."

The particular language construed by the Indiana Court was: "It shall be the duty of the general assembly to submit such amendment or amendments to the electors of the state; and if a majority of said electors shall ratify the same, such amendment or amendments shall become a part of the constitution."

It is to be observed that the Indiana Court said, " * * * in the absence of some constitutional requirement that proposals to amend (Constitution) be submitted at general elections * * *." In discussing this, the Court further said, "In short, the effect of omitting any reference to a general election is to treat a submission of a proposed amendment as a separate and distinct election, even though the admission be on the day of a general election * * *."

Under Article 5, Sec. 3, of our Constitution, "All elections on measures referred to the people of the State shall be had at the next election held throughout the State, except when the Legislature or the Governor shall order a special election for the express purpose of making such reference." Also, under Article 24, Sec. 1, of the Constitution, which relates to constitutional amendments proposed by the Legislature, this language is used, " * * * and referred by the Secretary of State to the people for their approval or rejection, at the next regular general election, except when the Legislature, by a two-thirds vote of each house, shall order a special election for that purpose."

It is apparent that under our Constitution a proposal to amend the Constitution shall be submitted at the next general election unless submitted at a special election. If the Governor or the Legislature does not order a special election, the proposal will be submitted by operation of the Constitution and laws implementing and vitalizing the Constitution. Therefore, the Indiana case above cited is not authority for the issue involved in the instant action.

Cited as authority is Houston v. Boltz, 169 Ky. 640, 185 S.W. 76, wherein the Kentucky Court of Appeals held that an election, specially called under Sec. 157a of the Constitution on the propositions to issue road and bridge bonds was properly held on the same day with the General November Election, and was none the less a "Special Election", which is an election held to supply a vacancy in office occurring before the expiration of the full term for which the incumbent was elected, or an election at which some question or proposition is submitted.

Section 157a, supra, authorizes the issuance of bonds for the construction of public roads and bridges, provided the indebtedness is approved by the voters of the county at a special election for that purpose. It further provides that the election shall be held "in such a manner as may be provided by law". The Court pointed out that Sec. 4307 of the Kentucky Statutes was enacted for the purpose of carrying out Sec. 157a, of the Constitution and that said statutory provision "nowhere requires the special election to be held upon a day different from the general election."

Also cited is Furste v. Gray, 240 Ky. 604, 42 S.W.2d 889, wherein the Kentucky Court of Appeals said:

"That time for holding election to fill vacancy in General Assembly may be fixed for same day as general election does not prevent it from being 'special election.'"

The Furste case involved a special election for the unexpired term of a State Senator. It was pointed out that under the Kentucky law that when a vacancy happens in either branch of the General Assembly during session, the presiding officer of the house in which the vacancy occurs shall issue writ of election, and that, if the General

Assembly is not in session, the writ shall be issued by the Governor. It was also pointed out that the time for holding the election was not fixed by law but that the statute relating to issuance of writ of election to fill a vacancy in the General Assembly was mandatory. Since it was mandatory the Court said that issuance of the writ of election was a condition precedent to holding a valid election.

Neither of the above Kentucky cases involve a proposal to amend the Constitution and if a proposal were made to amend the Constitution it would require for adoption only a majority of the votes cast for and against the proposed Constitutional Amendment, (See Sec. 256 of the Kentucky Constitution); whereas our Constitution requires a majority of the votes cast in such election, if the election is held at the general election. Neither does the Kentucky Constitution provide that a special election may be called upon a proposed Constitutional Amendment.

It is also pertinent to note that it is mandatory that issuance of the writ of election was a condition precedent to holding a valid election in the Furste case. As previously pointed out, unless the Governor or the Legislature orders a special election, by operation of our Constitution and our statutory provisions, a proposed amendment to the Constitution must be voted on at the next general election.

The case of Wilson v. Wasco County, 83 Or. 147, 163 P. 317, does not support Respondent's contention in the instant action. That case involved the issuance of road bonds by a county and did not involve a proposal to amend the Constitution. However, the Constitution of Oregon, art. 4, § 1, provides for a constitutional amendment by election through the initiative petition process and specifically provides: "All elections on measures referred to the people of the state *shall be had at the biennial regular general elections,* except when the Legislative Assembly shall order a special election. Any measure referred to the people shall take effect and become the law *when it is approved by a majority of the votes cast thereon,* and not otherwise." (Emphasis added.)

Therefore, whether a constitutional amendment is submitted in the State of Oregon at the general election or a special election, its adoption requires a majority of the votes cast thereon, and does not require a majority of the votes cast in such election as required by the Constitution of the State of Oklahoma.

None of the cases cited by Respondents and Amici Curiae involve or determine the basic and fundamental issue in the instant action as that issue is set forth in the majority opinion. The cases cited by Respondents and Amici Curiae places a construction on the language employed in the Constitution and statutory provisions of other states; whereas, we must place a construction on our Constitution and statutory laws implementing and vitalizing our Constitutional provisions.

There is a well recognized difference in the actual result of the method of counting votes on measures or constitutional amendments properly voted on at a general election and those voted on at a special election, that is, an election date specially fixed and called for the special purpose of considering such a matter. In each instance the votes must be counted and a result reached as provided in the Constitution, and it has never been held to the contrary.

It has been repeatedly held and understood and acquiesced in for more than half a century by voters and elected officials and all other officials that when a constitutional amendment is initiated by the people and is properly submitted and voted upon by the electors at a general election that in order to be passed and approved as an amendment to our Constitution it must receive the favorable vote of a "majority of all the electors voting at such election."

Article XXIV of the Constitution is devoted to the subject of constitutional amend-

ments. It is provided in Section I, of that article as follows:

"Any amendment or amendments to this Constitution may be proposed in either branch of the Legislature, and if the same shall be agreed to by a majority of all the members elected to each of the two houses, such proposed amendment or amendments shall, with the yeas and nays thereon, be entered in their journals and referred by the Secretary of State to the people for their approval or rejection, at the next regular general election, except when the Legislature, by a two-thirds vote of each house, shall order a special election for that purpose. If a majority of all the electors voting at such election shall vote in favor of any amendment thereto, it shall thereby become a part of this Constitution.

"If two or more amendments are proposed they shall be submitted in such manner that electors may vote for or against them separately."

And in Section 3 of that Article it is provided as follows:

"Right of amendment by initiative petition not impaired"

"This article shall not impair the right of the people to amend this Constitution by a vote upon an initiative petition therefor."

Thus it is well provided that a proposal to amend the Constitution may originate in the Legislature or be initiated by the people. But in either instance, by those provisions, the proposed amendment must be adopted by vote of the people, in the manner and to the vote measurement required, before it may become a part of the Constitution.

The last quoted paragraph is important because the proposed constitutional amendment here involved was presented by an initiative petition authorized by that paragraph and other provisions of the Constitution and statutes not contrary thereto. The regular biennial general election of and throughout the State was held on Novem-

ber 6, 1962. The proposed constitutional amendment and all candidates for state office were voted on in every precinct in the State at the same time and place, and with the same election officials and counters serving the precinct and the voters thereof, as at all former general elections. Without question, it was a general election.

Therefore, we have before us the question as to whether the Chief Executive could convert this election into a Special Election as to any one of several matters coming regularly by law upon the ballot and before the people for their votes on that day and at the regular times and places thereof.

The importance of the question and the necessity for a clear determination thereof is made more impressive when we are reminded that a large number of measures and constitutional amendments might be voted on at the same general election with an effort by the Governor to label the general election as a Special Election as to one of such items, but leaving it to stand as a General Election as to others of such items.

In this connection it is interesting to note that another proposed amendment to the Constitution referred by the Legislature under Article 24, Sec. 1, of the Constitution, was voted on as State Question No. 406, Legislative Referendum No. 135, at the general election on November 6, 1963.

State Question No. 406 and State Question No. 408, both being proposed constitutional amendments, were voted on separately, that is on ballots separate from each other and also on ballots separate from the ballots for the election of officers.

Both questions received substantially more "Yes" votes than "No" votes, but neither received a favorable vote of a majority of all the electors voting at the general election.

However, there was a difference in the Executive Proclamation after the election of November 6, 1962. As to Question No. 406, the Executive Proclamation issued on November 19, 1962, though disclosing that there were more "Yes" votes than "No"

votes, it further recited the exact number of "all the electors voting at such election" and declared that it did not receive the constitutionally required majority and did not pass at the November 6, 1962 election.

As to State Question No. 408, the Executive Proclamation recited and demonstrated that there were more "Yes" votes than "No" votes, but did not recite or set out the exact number of "all the electors voting at such election", but recited that the total of "Yes" and "No" votes on the question "was the total number of votes cast at said election on State Question No. 408" and stated that this amendment voted as State Question No. 408 did pass and was adopted.

The initiative petition in this case signed by the people stated in the beginning:

> "We the undersigned citizens and legal voters of the State of Oklahoma, respectfully order that the following proposed amendment to the Constitution shall be submitted to the legal voters of the State of Oklahoma for their approval or rejection at the regular general election to be held on the 6th day of November, A.D. 1962, or at a special election which might be called for said purpose, and each for himself says:"

In my judgment, this proposed constitutional amendment, initiated by the people, was to be voted on by the people either at a general election or at a special election, other than the general election. There is nothing to indicate in our Constitution, statutory provisions, or the initiative petition, that it should or could be voted on at both a general election and a special election at the same time and by the same act of the voter by virtue of a Proclamation of the Governor.

The provision that a special election may be called is a wise one because conditions may arise and have arisen where it was very important to have an early view on some measure or constitutional amendment without waiting for the general election. That is the purpose of the various constitutional and statutory provisions for calling of a special election.

Whether the Legislature could call a special election on a general election day by a two-thirds vote of each house under Article XXIV, Section I, of the Constitution, is not an issue in this case. However, to empower the Governor to call a special election on the day of the general election would vest in him the privilege and authority to determine whether a constitutional amendment should be adopted because a majority of those who voted on such constitutional amendment favored such amendment, or determine whether such adoption should require a majority of those who voted in the general election. In other words, the Governor would have the privilege and the sole prerogative of determining whether the silent vote should be considered for or against a constitutional amendment. In my judgment the Chief Executive does not have such authority.

I am authorized to state that Mr. WELCH, J., concurs in the views herein expressed.

BERRY, Justice (dissenting).

For reasons hereafter stated, I am unable to agree with the conclusion reached in the majority opinion.

The question posed by this proceeding is whether power and authority rests in the Governor to call a special election on an initiated measure where the date of such election falls on the same date of a so-called general election.

If the answer to the mentioned question is "yes", then Initiated Petition No. 271, hereafter referred to as "measure", was adopted. This is true because 335,045 affirmative votes and only 237,287 negative votes were cast on the measure.

This question has never heretofore been considered by this Court. In fact, it appears that no appellate court has had occasion to rule therein.

In my opinion the answer to the question must be found in Art. V, Sec. III of

the Oklahoma Constitution. The relevant portions of the cited section reads thusly:

"* * * All elections on measures referred to the people of the State shall be had at the next election held throughout the State, *except when the Legislature or the Governor shall order a special election for the express purpose of making such reference.* Any measure referred to the people by the initiative shall take effect and be in force when it shall have been approved by a majority of the votes cast in such election. Any measure referred to the people by the referendum shall take effect and be in force when it shall have been approved by a majority of the votes cast thereon and not otherwise." (Emphasis supplied.)

It is made clear in the above quoted matter that power and authority rests in the Governor to call a special election on an initiated measure. The majority concludes that such power extends only to calling a special election on such a measure on any date except that upon which a general election is held. The basis for this conclusion appears to be that (a) Art. V, Sec. III, is not self-executing and that it was therefore necessary for the Legislature to vitalize it; that (b) legislation vitalizing the constitutional provisions makes clear that a special election cannot be held on date of a general election; that (c) a majority of jurisdictions hold that a special election cannot be held on date of general election; that (d) such has been the administrative construction of Art. V, Sec. III; that (e) to otherwise construe said section would work to the detriment of the public.

I agree that the framers of the Constitution intended that the Legislature enact legislation which would implement the mentioned section by, in effect, supplying details that would make it workable, but, in my opinion, did not intend that such legislation run counter to the provisions of the section and nullify plain and specific provisions of same. At p. 205, § 70, 16 C.J.S.

Constitutional Law it is said that "The legislature may, however, enact a statute for the purpose of putting in force a provision of the constitution, and under certain circumstances and in the absence of constitutional restriction, it may enact a statute which aids or amplifies a constitutional provision, and may by enactment add a condition to a constitutional provision, provided *such enactment does not violate the constitution.*"

In the second paragraph of the syllabus to In re House Bill No. 145, 205 Okl. 364, 237 P.2d 624, it was said that "The authority of the Legislature extends to all rightful subjects of legislation not withdrawn by the Constitution or in *conflict* therewith."

In keeping with the pronouncements that are above alluded to, the authorities hold that it is beyond the power of the Legislature to usurp the constitutional powers of the Executive. At p. 887, § 187, 11 Am.Jur. Constitutional Law it is said that "Another *fundamental rule* is that the legislature may not usurp the constitutional powers of the *executive department* by interference with the functions conferred on that department by *organic law.*" The thought expressed in the last quotation is stated thusly at p. 545, § 130, 16 C.J.S. Constitutional Law:

"In accordance with constitutional provisions separating departments of government, the legislature cannot interfere with, or exercise any powers properly belonging to, the executive department. Thus, the legislature cannot relieve or preclude any executive officer from the performance of a duty enjoined on him by the constitution, or, as otherwise expressed, *it cannot take away from a constitutional officer the powers or duties given him by the constitution * * *.*" (Emphasis supplied.)

It was held in St. Louis-San Francisco Ry. Co. v. State, Okl., 268 P2d 845, 850, that the Corporation Commission "is irrevocably vested with the power and authority subject to review on appeal to fix

rates, charges and classifications of traffic for transportation and transmission companies, which vested powers are subject to regulations by law; that the legislature is impotent by legislation to deprive the Commission from the exercise of such enumerated power but may, by general law, authorize the mode, method and procedure governing their enforcement". Since Sec. 3, supra, grants the Governor power and authority to call a special election, the Legislature "is impotent" to enact legislation curtailing the power, therefore enact legislation providing that the Governor is free to exercise such power except when the special election coincides with a general election.

The answer to the problem posed by this proceeding, must be found in Sec. 3, supra, and cannot properly be based in whole or in part upon statutes that construe the provisions thereof granting to the Governor power and authority to call a special election for the purpose of submitting to vote an initiated measure.

In construing Sec. 3, supra, one should keep in mind the well-established rule that initiative measures will be liberally construed and will not be struck down except upon a clear showing that the measure is unconstitutional. At p. 70, § 14, 16 C.J.S. Constitutional Law, this is said:

"Initiative and referendum provisions should be liberally construed; and any doubt should be resolved in favor of the exercise of this right by the people. * * * The exercise by the people of the power thus reserved will not be interfered with except on a clear showing of a violation of the law, * * *".

See also 28 Am.Jur. Initiative, Referendum and Recall, § 6, p. 439.

In McFadden v. Jordan, 32 Cal.2d 330, 196 P.2d 787, 788, this was said:

"The right of initiative is precious to the people and is one which the courts are zealous to preserve to the fullest tenable measure of spirit as well as letter. As said in Gage v. Jordan (1944), 23 Cal.2d 794, 799, 147 P.2d 387, 390, 'All doubt as to the construction of pertinent provisions is to be resolved in favor of the initiative and such legislation is to be given the same liberal construction as that afforded election statutes generally (citations)' * * *".

If the above mentioned rules are applied in the instant case, the will of the people as expressed by the vote in the measure will not be struck down.

The rule is followed in many jurisdictions that a special election is one which must be specifically called and that takes place at a time different from the general election. In other jurisdictions it is held that an election to vote on some question or proposition is a special election, notwithstanding the fact that it is held on the same day as a general election. See 29 C.J.S. Elections § 1c, p. 14, and 18 Am.Jur. Elections, § 248, p. 345, and cases cited at p. 1402 of annotated notes beginning at p. 1382, 131 A.L.R.

Under Art. III, Sec. 5, Okla.Const., a mandatory duty rests upon the Legislature to provide for "a mandatory primary system", and for many years the Legislature has carried out the mandate by providing for a state-wide primary election or elections on stated dates. This Court, notwithstanding that a primary is not a special election within the rule first mentioned in the foregoing paragraph, has held that when by directive of the Governor, an initiated measure is submitted at a primary election it will be considered as having been submitted at a special election and will be deemed to have passed if a majority of those voting thereon vote affirmatively. See State ex rel. Babb, Co. Atty. v. Mathews et al., 134 Okl. 288, 273 P. 352, and State ex rel. Carrier et al. v. State Election Board et al., Okl., 318 P.2d 422, 425.

The statement in the last cited case to the effect that the Governor may call a special election on an initiated measure on any date except date of a general election is dictum. Such is true because the Gov-

ernor had not there, as here, called a special election. The issue presented in the Carrier case was whether a measure voted upon at a general election should be considered as having been enacted where a majority of those voting at the election did not cast an affirmative vote thereon.

I do not consider that the 1946 opinion of the Attorney General has any bearing upon the issue before us. First, it is settled law that so-called administrative construction will only be considered where the provision under consideration is ambiguous. As I read Sec. 3, supra, it is clear that the Governor, in his discretion, may by appropriate proclamation submit an initiated measure on any date. Second, administrative construction will only be noticed where uniform and consistent. In the instant case the Attorney General construed Sec. 3 one way and the Governor another.

I am not persuaded by argument that it would not be to the best interest of the people to hold that the Governor can call a special election on date of a general election, nor by argument that if he so acts it is superfluous.

In the instant case the proclamation of the Governor calling a special election on the measure was given wide and extended coverage by newspapers, radio and television. The coverage was such that the vast majority of those voting at the elections were cognizant of the Governor's action; therefore, his action was not superfluous. For said reason it cannot be seriously urged that any considerable number of voters thought that the matter of their abstaining from voting thereon was equivalent to registering a negative vote. I add, that the number of "yes" votes was such as to demonstrate that a great number of persons would have had to have been misled in order to change the outcome of the election.

It is a matter of common knowledge that as a general rule more people vote at a general election than at a primary election. At a general election a voter is not bound to observe party lines and locally independents and members of parties other than the two major parties are privileged to vote, which is not true of our primaries. Therefore, a more representative vote will, as a rule, be had at a general election than at a primary election. We entertain no doubt that a greater number of persons appeared at the polls on November 6, 1962, than would have appeared at a special election held on day of a primary election or some day that did not coincide with date of the general election.

I feel no tenable argument, legal or equitable, can support the theory that the Governor can place this measure on a primary ballot at a special election and deny him this same privilege at a general election.

It is patent that from a practical standpoint, submission of the measure at the November 6, 1962, election instead of at a prior special election (1) saved the State in excess of $100,000.00; (2) was a convenience to the voters; and (3) resulted in a greater number of voters appearing at the polls, which resulted in a more representative vote.

Any suggestion that a decision herein favorable to respondents would place the Governor in a position to discriminate is not well taken. As a practical proposition, he unquestionably has such power. This is true because it is within his discretion to submit an initiated measure to a vote at a special election or remain silent and thereby cause it to be submitted at the next general election. And if two or more measures are ready for submission, he may, in his discretion, submit one at a special election and by inaction cause the other to be submitted at a general election. In either of the mentioned instances, he has the power to discriminate.

The presumption is indulged that a public official will do his duty and will act in the interest of the public. Such must be the conviction of the people, otherwise Sec. 3 no doubt would long ago have been amended.

' If it is unwholesome for the Governor to submit an initiated measure to a vote on date of a general election, then why is it not unwholesome for him to submit such a measure to a vote on a date that does not coincide with date of a general election, and why is it not unwholesome for him to possess and exercise veto power over legislation. To my way of thinking, the people did not think such to be the case and therefore, under plain provisions of the Constitution, granted such powers to the Governor.

History bearing upon apportionment of our Legislature convinces me that the Governor acted wisely and in the best interest of the people in submitting the measure to a vote at the general election. I refer to the fact that (1) the Legislature has declined to apportion itself in accordance with the Constitution; that (2) an action is presently pending in the local Federal Court that has for its purpose apportionment of the Legislature; that (3) litigations conducted by those contesting (respondents) the validity of the initiated petition was only concluded shortly before the general election; therefore, the calling of a special election prior to the general election would not have been feasible and would have imposed upon the voters; that (4) as aforesaid, a more representative vote was had on the measure at the special election held on date of the general election than would have resulted if a special election had been called prior thereto; that (5) by proceeding as the Governor did, there was a saving to the State, and the convenience of the voters was served.

To hold that the Governor can be denied his right to call a special election on a general election day may invite calculated delaying tactics by those opposing the measure which will force a vote thereon on date of general election and thusly place them in a position where they can contend, as here, that the measure failed notwithstanding a majority of the votes cast thereon were in the affirmative. Thusly, matters of grave public concern, such as the measure under consideration, can be made to depend upon the timing of those opposed to the measure. It is apparent that the framers of the Constitution had no such intent or desire—they did not intend that the number of votes necessary to adopt an initiated measure depend upon legal maneuvers.

For reasons stated I respectfully dissent from the Majority opinion.